MAHON-EVANS REALTY, INC. ET AL.,
APPELLEES, *v.* SPIKE ET AL.,
APPELLANTS.

(No. 3944 — Decided
August 20, 1986.)

*Lucian C. Rego,* for appellees.
*Larry E. Coey,* for appellants.

GEORGE, J. Defendants-appellants, Lester Spike and the Exit 11 Budget Motel, Inc., appeal the summary judgment of the trial court finding appellants liable for a real estate commission as well as the amount of the commission.

The appellants entered into a six-month exclusive listing agreement with plaintiffs-appellees, Mahon-Evans Realty, Inc. and John R. Evans. The agreement recited that Evans and his realty company had the exclusive right to sell the property, the Exit 11 Budget Motel, Inc., for the sum of "$940,000 Net to Seller." This quoted terminology was handprinted into a blank space provided on the pre-printed form. Immediately following the price is a clause which reads in its entirety:

"If you are successful in finding a purchaser for my/our property and/or business, or if the same is sold or exchanged during the term of your exclusive agency, or is sold within one year after the period of this agency to anyone with whom you have negotiated with respect to a sale during the period of this agency, I/we agree to pay to you a commission of 6% minum [*sic*] upon the price at which same may be sold or exchanged."

About two weeks after the execution of the exclusive listing agreement, Evans presented Spike with an offer to purchase the property. The buyer offered one million dollars and made a deposit of $25,000. Apparently due to some inaccuracies in the description of the property's financial status contained in this purchase offer, Spike rejected it.

One month later, Evans presented Spike with another purchase offer from the same buyer. This offer was for the same price, but with an accurate description of the property's financial condition. The buyer had deposited $5,000 with Evans and Spike accepted this offer. The acceptance clause which preceded Spike's signature recited that he agreed to pay Evans a six-percent commission on the property.

After the purchase agreement had been executed, the buyer formed a cor-

poration to raise capital for the purchase. At this time, the now corporate buyer became dissatisfied with the terms of the agreement due to its unfavorable tax consequences. Spike's lawyers drafted a new purchase agreement. This new agreement was executed by Spike and the newly formed corporate buyer.

Signing the new purchase agreement on behalf of the corporate buyer was its president, the initial buyer's husband. This agreement contained a clause acknowledging the $5,000 deposit held by Evans and crediting that deposit towards the purchase price. The purchase price in this new agreement was for $963,000. Evans was never notified of the subsequent negotiations or the new terms of the sale. Evan's demands for his real estate commission were ignored.

Evans brought a complaint against Spike for payment of his commission. Evans filed a motion for summary judgment and Spike filed a motion in opposition. The trial court granted partial summary judgment to Evans finding Spike liable for the commission. The issue of the exact amount of the commission was submitted to a referee. The referee found that Evans was entitled to $57,780 or six percent of the ultimate purchase price of $963,000.

The trial court adopted the findings and report of the referee. This court reverses and remands the prejudgment interest award and affirms the award of the commission.

### Assignment of Error I

"The trial court erroneously granted the plaintiffs-appellees' motion for summary judgment on the issue of liability for a real estate commission."

In reviewing a motion for summary judgment, the trial and appellate courts use the same standard, namely, that inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. If when so viewed, reasonable minds can come to differing conclusions, the motion should be denied. *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, 433, 21 O.O. 3d 267, 271, 424 N.E. 2d 311, 315. This court finds no merit in Spike's contention that the trial court improperly granted summary judgment in favor of Evans on the liability question.

In his motion for summary judgment, Spike admitted that Evans was due some compensation in the form of a commission, but not the amount he was requesting. His affidavits submitted with his motion in opposition do not contradict this admission. Civ. R. 56(C) requires that a court render summary judgment forthwith if:

"[T]he *pleading,* depositions, answers to interrogatories, written admissions, affidavits * * * show that there is no genuine issue as to any material fact * * *." (Emphasis added.)

Spike's indisputable concession that Evans was entitled to a commission was dispositive of the liability question. There was no longer any genuine issue as to Spike's liability for a real estate commission. In addition, a review of the parties' agreement, their affidavits and the depositions submitted to the trial court leaves no doubt that Evans was solely responsible for procuring the purchaser of the property. Where the terms of the brokerage contract are clear as to the nature of the performance required in order to entitle the broker to his commission, the fee will be owed upon completion of that performance. See 10 Ohio Jurisprudence 3d (1979) 91, Brokers, Section 71; *Harley E. Rouda & Co.* v. *Springtime Co.* (1975), 49 Ohio App. 2d 49, 3 O.O. 3d 116, 359 N.E. 2d 450.

Evans fulfilled the terms of the ex-

clusive listing agreement by producing a purchase offer from the ultimate buyer in excess of the price requested by the seller. Spike's argument that the ultimate buyer (the corporate entity) was a new buyer procured by himself is specious. To allow a seller of real estate to avoid his liability for the broker's commission through such artifice would constitute an abuse of the corporate form. Accordingly, Assignment of Error I is overruled.

## Assignment of Error II

"The referee's report, as adopted by the trial court on the issue of the amount of the real estate commission, if any, due is against the manifest weight of the evidence."

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578.

The referee in this case listened to testimony concerning the contracting parties' intent with respect to the amount of the commission due under the exclusive listing agreement. However, this testimony was not transcribed until after the trial court had adopted the referee's findings and report and rendered its final judgment. Because Spike never favored the trial court with a record of the proceedings before the referee, this court is now precluded from considering that transcript as part of the record on appeal. *Airwyke* v. *Airwyke* (Dec. 14, 1983), Wayne App. No. 1857, unreported.

As a consequence of Spike's failure to provide the trial court with a transcript of the proceedings before the referee, this court cannot determine if those findings are against the manifest weight of the evidence or whether the trial court erred in adopting the findings. *Id.* at 4. Accordingly, Assignment of Error II is overruled.

## Assignment of Error III

"The trial court erroneously ordered interest on the judgment to be computed from January 29, 1983."

Absent a contractual provision to the contrary, a real estate broker is entitled to his commission upon the consummation of the sale of the property. *Ballard* v. *Thompson* (1965), 5 Ohio App. 2d 92, 34 O.O. 2d 197, 214 N.E. 2d 102, paragraph one of the syllabus. Pursuant to R.C. 1343.03(A), any award of interest on a judgment for a commission should be calculated from the date the sale was consummated:

"The running of interest is not delayed because the debtor denies owing the debt, but, rather, is delayed only where the amount is unliquidated, that is, the amount of the debt is uncertain; and, the amount remains unliquidated until the date of judgment.

"Where the amount of the debt is clear, but the only question raised is whether the plaintiff is entitled thereto, interest runs on the debt from the time that it was due and payable, as eventually found by the court." *Braverman* v. *Spriggs* (1980), 68 Ohio App. 2d 58, 22 O.O. 3d 47, 426 N.E. 2d 526, paragraphs two and three of the syllabus.

In the instant case, the parties' agreement contained language indicating two separate methods of determining the broker's commission. The handwritten notation "$940,000 Net to Seller" would indicate that Evans was only entitled to that amount in excess of $940,000 resulting from the property's sale. *Hoke* v. *Marcis* (App. 1955), 71 Ohio Law Abs. 364, 127 N.E. 2d 54. However, the agreement also contained the clause previously quoted which guaranteed a six-percent commission on the entire purchase price.

The trial court submitted the issue created by this ambiguity to the referee for resolution.

Black's Law Dictionary (5 Ed. 1979) 1378 defines the term "'unliquidated'' variously as:

"Not ascertained in amount; not determined; remaining unassessed or unsettled; as unliquidated damages; * * *. A debt is spoken of as 'unliquidated,' if the amount thereof cannot be ascertained at the trial by a mere computation, based on the terms of the obligation or on some other accepted standard* * *."

In the instant case, the ambiguity created by the inclusion of two methods of payment within the single exclusive listing agreement made it impossible to ascertain which of the two amounts controlled. Because this amount could not be ascertained, the trial court was unable to grant summary judgment on the question of damages — there existed a genuine issue of material fact as to the amount of the debt owing. Until, and only until, the trial court finally resolved the existing ambiguity, did the amount of the debt become known. The amount of the debt was not ascertainable by reference to the language of the contract. As long as the proper amount of the commission remained undetermined, it was a choice between two different figures and it was not ascertainable or liquidated. Where the trial testimony amply demonstrated that both parties to the contract held different views as to the amount owing, and where the amount could not be determined by mere reference to the parties' agreement, the debt is unliquidated. *White v. M.S.J. Realty Co.* (Sept. 23, 1985), Stark App. No. 6613, unreported.

The dissent suggests that since the trial court's ultimate judgment found that Spike became obligated to pay Evans his commission on January 29, 1983, that interest should be paid from that date. However, when the commission became due and payable is irrelevant to a prejudgment interest determination if the amount of the commission due was unclear until it was adjudicated. The date that the amount of the commission became liquidated is the only relevant question.

The trial court erred in ordering interest on the commission to run from the date of the property's sale, January 29, 1983. Accordingly, Assignment of Error III is sustained and this court orders that statutory interest shall accrue from the date of the trial court's judgment. App. R. 12(B). The judgment is affirmed in all other respects.

*Judgment affirmed in part, reversed in part and cause remanded.*

BAIRD, J., concurs.

QUILLIN, P.J., dissents.

QUILLIN, P.J., dissenting. The trial court found that the defendants on January 29, 1983 became obligated to pay to plaintiffs $57,780 as and for a real estate commission. The majority affirms that decision. The trial court also held that the defendants must pay plaintiffs interest on that sum from the time they should have paid it. The majority, however, says that interest cannot be allowed from the date the commission was due, but only from the date of the judgment.

The question, as I see it, is whether the plaintiffs have been further damaged by the defendants' wrongful refusal to pay the commission when it was earned. To ask the question is to give the answer. Of course, they have been further damaged. If the purpose of an award of damages is to fully compensate the wronged person, as it is, how can it possibly be said that the

plaintiffs, who have been wronged, have been fully compensated when they have been deprived of $57,780 for more than two years?

For those interested in a more in-depth study of prejudgment interest, a look at the following authorities would be helpful. McCormick, Damages (1935) 205, Section 50 *et seq.;* 1 Sedgwick, Damages (9 Ed. 1920), Section 300; Note, Recovery of Prejudgment Interest on an Unliquidated State Claim Arising within the Sixth Circuit (1977), 46 U. Cin. L. Rev. 151; Annotation, Allowance of Prejudgment Interest on Builder's Recovery in Action For Breach of Construction Contract (1974), 60 A.L.R. 3d 487; Annotation, Interest on Damages for Period Before Judgment for Injury to, or Detention, Loss, or Destruction of, Property (1954), 36 A.L.R. 2d 337; 22 American Jurisprudence 2d (1965) 256, Damages, Section 179 *et seq.*

The term "interest" includes two distinct forms of compensation. Conventional interest, sometimes called interest *eo nomine,* is compensation allowed by law or fixed by the parties for the use or detention of money. Interest as damages is compensation allowed as additional damages for loss of use of the money due during the lapse of time since the accrual of the claim. McCormick, *supra,* at Section 50.

Conventional interest was not allowed at common law. It was considered usurious and its taking was a punishable offense. With the advent of modern commercial practice, however, the recovery of interest was authorized by statute and parties were permitted, within limits, to contract for interest. Prejudgment interest, that is, interest as damages, is a judicial creation. Its allowance is not dependent on the existence of statutory authorization.

Because of the common-law stigma associated with interest *eo nomine,* the

courts were slow to accept the concept of interest as damages. Initially, interest as damages was allowed only on liquidated claims. This was broadened both by a more expansive definition of what is a liquidated claim and also by allowing interest not only on liquidated claims but also unliquidated claims capable of ascertainment. The better view is to recognize that the object of interest as damages is to fully compensate the wronged person for pecuniary loss and it matters not if that loss is liquidated or unliquidated.

McCormick traces the distinction between liquidated claims and unliquidated claims to a survival of the medieval distaste for interest as "usurious." McCormick, *supra,* Sections 51 and 55. The move away from the illogical distinction between liquidated and unliquidated claims has varied from a re-definition of what is a liquidated claim to a complete rejection of the distinction itself. 22 American Jurisprudence 2d (1965), Damages, Sections 179, 181 and 185.

The United States Supreme Court has noted whether the claim be liquidated or not, that "when necessary in order to arrive at fair compensation, the court in the exercise of sound discretion, may include interest or its equivalent as an element of damages." *Miller* v. *Robertson* (1924), 266 U.S. 243, 258. And in *Funkhouser* v. *J.B. Preston Co.* (1933), 290 U.S. 163, 168-169, the Supreme Court said:

"* * * It has been recognized that a distinction, in this respect, simply as between cases of liquidated and unliquidated damages, is not a sound one. Whether the case is of the one class or the other, the injured party has suffered a loss which may be regarded as not fully compensated if he is confined to the amount found to be recoverable as of the time of breach and nothing is added for the delay in obtaining the award of damages. Because of this

fact, the rule with respect to unliquidated claims has been in evolution (*Faber* v. *New York* [222 N.Y. 255, 118 N.E. 609], *supra*), and in the absence of legislation the courts have dealt with the question of allowing interest according to their conception of the demands of justice and practicality. *Miller* v. *Robertson,* 266 U.S. 243, 258. 'The disinclination to allow interest on claim of uncertain amount seems based on practice rather than theoretical grounds.' Williston on Contracts, vol. III, § 1413.* * *"

The Ohio Supreme Court long ago recognized that merely because a claim was unliquidated did not preclude prejudgment interest as damages. In *Lawrence RR. Co.* v. *Cobb* (1878), 35 Ohio St. 94, an abutting landowner sued a railroad for damage caused by an excavation in front of the lot whereby access to the lot was destroyed. In approving prejudgment interest as damages the court said at 98-99:

"Nor was there error in the charge of the court in respect to the amount of damages. The rule of damages in such case is compensation for the injury, or, in other words, that the injured party should be made whole. And while it is true that such a claim is not one, which, under the statute, bears interest, nevertheless, if reparation for the injury is delayed for a long time by the wrong-doer, the injured party can not be made whole unless the damages awarded include compensation, in the nature of interest, for withholding the reparation which ought to have been promptly made."

Where the city unlawfully took land, the owner was entitled to not only the value of the land taken but also prejudgment interest. *Longworth* v. *Cincinnati* (1891), 48 Ohio St. 637, 28 N.E. 274.

Prejudgment interest as compensation must be looked at from the perspective of the wronged party and not the perspective of the wrongdoer. It is not punishment, as is sometimes suggested, but compensation. Therefore, it matters not if the failure to pay a lawful claim is due to the wrongdoer's deliberate delay or an honest dispute as to the amount due. The additional damage to the wronged party is the same.

Although I am prepared to go as far as *Cavnar* v. *Quality Control Parking, Inc.* (Tex. 1985), 696 S.W.2d 549, wherein the Supreme Court of Texas in personal injury and wrongful death cases now allows prejudgment interest as damages for both pecuniary and non-pecuniary losses, I do feel that prejudgment interest as damage should not be precluded on pecuniary loss, merely because the claim is unliquidated.

I also disagree with the majority's application of the very rule which they purport to follow, that is, the amount due could not be ascertained until trial. The contract between the parties provided (as both the trial court and this court have determined) that the broker was due six percent of the sale price as commission. I fail to see how this amount can be said to be incapable of ascertainment. Furthermore, the sellers admitted owing some commission but not the total amount claimed. And yet, this court does not even allow interest on the undisputed amount. The logic of this also escapes me.

I would affirm the judgment below.