The CYRIL BATH COMPANY, Plaintiff–Appellant and Cross–Appellee,

v.

WINTERS INDUSTRIES, A DIVISION OF THE WHITTAKER CORPORATION, Defendant–Appellee and Cross–Appellant.

Nos. 88–3882, 88–3929.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 10, 1989.

Decided Dec. 20, 1989.

Lawrence W. Stacey (argued), Columbiana, Ohio, for plaintiff-appellant cross-appellee.

Frederick W. Whatley (argued), W. Mowry Connelly, Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for defendant-appellee cross-appellant.

Before JONES and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant/cross-appellee, Cyril Bath Company, and defendant-appellee/cross-appellant, Winters Industries, both appeal an order awarding Cyril Bath damages for breach of contract and prejudgment interest. For the following reasons, we affirm in part and reverse in part.

## I.

In 1983, Winters Industries (Winters), a division of Whittaker Corporation, entered into a contract with the General Motors Corporation (GM) to manufacture an engine intake manifold assembly. Seeking metal tubing, Winters asked for a quotation on "price and delivery" in July 1983. The Cyril Bath Company submitted a written quotation to Winters on October 25, 1983, and a revised quotation on November 16, 1983, offering to provide three types of aluminum tubes used in the manifold assembly. The revised quotation specifically stated that the prices "are based on a three year program with annual production requirements" of 800,000 tubes in each of the first two years and 400,000 tubes in the third year.[1] On November 30, 1983, Win-

---

* The Honorable Albert J. Engel took senior status on October 1, 1989.

1. The production requirements were as follows:

|  | 1st year | 2nd year | 3rd year |
|---|---|---|---|
| P/N 14081007–4 | 160,000 | 160,000 | 80,000 |
| P/N 14081007–5 | 160,000 | 160,000 | 80,000 |
| P/N 14081007–6 | 160,000 | 160,000 | 80,000 |
| P/N 14081007–7 | 160,000 | 160,000 | 80,000 |
| P/N 14081007–8 | 80,000 | 80,000 | 40,000 |
| P/N 14081008–8 | 80,000 | 80,000 | 40,000 |

J.App. at 110.

ters responded to Cyril Bath's offer with a confirming purchase order calling for a delivery date of March 1984—"As Released." J.App. at 112. Cyril Bath shipped the tubes to Winters from April 1984 to March 1986. On November 16, 1986, Winters informed Cyril Bath that it would require no more orders of tubes.

Cyril Bath initially filed a complaint in an Ohio state court, but the case was subsequently removed to the United States District Court for the Northern District of Ohio, Judge David D. Dowd presiding. The parties do not dispute that Winters breached the contract, or that appropriate damages should be awarded in an amount equal to Cyril Bath's lost profits. The only dispute is the amount of lost profits. The district court held that the contract between Cyril Bath and Winters, which began in March 1984, was a three-year "requirements contract," as recognized in the Uniform Commercial Code (UCC). Based upon this finding, the court calculated the amount of lost profits as $197,386.40 and added prejudgment interest of $42,767.05. On appeal, Cyril Bath requests a greater award of damages, and Winters objects to the award of prejudgment interest.

## II.

■ Cyril Bath argues that the district court erred in ruling that the instant contract was a "requirements contract." A requirements contract is a contract which calls for one party to furnish materials or goods to another party to the extent of the latter's requirements in business. UCC 2–306(1), as adopted by Ohio, sets forth the standard for a requirements contract:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

Ohio Rev.Code Ann. 1302.19(A) (Baldwin 1988). The district court found that the agreement between Cyril Bath and Winters was a requirements contract because Cyril Bath was aware that Winters' "requirements were dependent upon the order received from General Motors, and consequently [Winters'] purchase of tubes would depend upon their requirements with General Motors." J.App. at 35. As a result, the court noted that the level of production was by no means certain.

■ Cyril Bath argues that the agreement was not a requirements contract because Winters did not promise to purchase tubes exclusively from Cyril Bath. We find this argument unpersuasive. A promise to purchase exclusively from one supplier may be either implicit or explicit. *See Brem–Rock, Inc. v. Warnack*, 28 Wash. App. 483, 624 P.2d 220 (1981). Based upon Cyril Bath's awareness of Winters' needs in producing for GM and the specificity of the number of tubes in the contract, we hold that Winters' implicitly promised to purchase its tubes from Cyril Bath. In addition, in *City of Louisville v. Rockwell Manufacturing Co.*, 482 F.2d 159, 164 (6th Cir.1973), this court ruled that a contract to furnish only part of the buyer's requirements along with an approximate number of the identified goods is sufficient to be a requirements contract under UCC 2–306(1). In the instant case, Winters was explicitly obligated under the agreement to purchase its tubes from Cyril Bath at least up to the number specified, subject to good faith variation in the buyer's requirements.

Cyril Bath argues that even if the agreement was a requirements contract, it contained a minimum purchase amount of two million tubes. The district court ruled that under UCC 2–306(1), the contract requires production of tubes in the range specified, "subject to the good faith requirement needs of the defendant." J.App. at 35. *See R.A. Weaver & Associates, Inc. v. Asphalt Construction, Inc.*, 587 F.2d 1315, 1321 (D.C.Cir.1978) (" 'the seller assumes the risk of all good faith variations in the buyer's requirements' " (citation omitted)).

Because there was no evidence of bad faith on the part of Winters during the first two years of the contract, the district court properly considered the shortfall in only the third year when computing damages.

### III.

■ Cyril Bath further contends that the district court erred in its computation of the per unit cost of the tubes for the assessment of damages. We review findings of fact under the "clearly erroneous" standard. *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). In accordance with UCC 2–708, codified at Ohio Rev.Code Ann. 1302.82 (Baldwin 1988), the district court calculated the amount of lost profit by multiplying the shortfall in year three of the contract times the profit per unit. The court determined the shortfall of orders for tubes by subtracting the number of tubes actually sent in each category from the number called for in the contract. The shortfall in year three, according to the court's revised estimate, was as follows: 314,560 large tubes, 39,320 cold start tubes, and 39,320 EGR units. J.App. at 52.

The district court calculated the profit per unit by subtracting the cost of production from the price per unit specified in the contract. The court arrived at the cost per tube by taking the total cost of manufacturing during the first two quarters of the third year, and dividing that figure by the number of tubes manufactured, *not* shipped, during those two quarters. Using this procedure, the district court found damages to be $197,386.40.[2]

Cyril Bath objects to the district court's calculation of the cost per unit because it divided the total cost by the number of units manufactured during the quarter rather than the number of units shipped. The district court stated that such a calculation took into account the existing inventory at the beginning of each quarter. However, Cyril Bath notes that Peter Mapes, its accountant, took existing inventory into account when computing the cost per unit. Upon review of the record, we conclude that the district court's method for calculating the per unit cost was not clearly erroneous. The court was concerned with Mapes' calculation because it included already manufactured tubes that were sitting in inventory (expensed in an earlier quarter), thus artificially reducing the estimate of manufacturing costs. Only by examining the number of tubes manufactured during the first two quarters (the time at which the total cost was examined) can we get an accurate estimate of the actual cost per unit.

### IV.

■ Winters argues that the district court's award of prejudgment interest was inappropriate. Ohio Rev.Code Ann. 1343.-03(A) (Baldwin 1988) provides that:

> ... when money becomes due and payable upon any bond, bill, note, or other instrument of writing ... and upon all judgments ... arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum ...

In order to receive prejudgment interest, the damages must be liquidated. In the instant case, the district court decided that Cyril Bath was entitled to prejudgment interest from the date of breach in March 1986. The court found that "[a]lthough there was a dispute over the method of determining damages, the defendant and the plaintiff were able to calculate the amount due and owing." J.App. at 45. We review the district court's decision to grant prejudgment interest under an abuse of discretion standard. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St. 3d 83, 87, 482 N.E.2d 1248, 1251 (1985).

---

**2.**
*Large tubes*
$1.82 (price of tube) — $1.28 (cost of tube) × 314,560 (shortfall) =   $169,862.40
*Cold starts*
$1.00 (price of tube) — $1.08 (cost of tube) × 39,320 (shortfall) =   $0.00

EGRS
81.19 (price tube) — $.49 (cost of tube) × 39,320 (shortfall) =   $ 27,524.00
   Total Damages =   $197,386.40

Winters contends that the district court abused its discretion in granting prejudgment interest because the amount of damages was not clearly ascertainable at the time of the breach of contract. In *McKinney v. White Sewing Machine Corp.*, 32 Ohio Op.2d 306, 310, 200 N.E.2d 596, 600 (1964), the court set forth the standard for awarding prejudgment interest:

'Interest will not be denied although the sum due is unliquidated where the amount is capable of ascertainment by mere computation, or is subject to reasonable certain calculations by reference to existing market values; but where computation is based on market values, such values must be well established and knowledge thereof must be accessible to the debtor.' (citation omitted)

In *Mahon–Evans Realty, Inc. v. Spike*, 33 Ohio App.3d 268, 515 N.E.2d 953, 956 (1986), the Ohio appellate court reversed the trial court's award of prejudgment interest because the amount due under the contract was not ascertainable from the contract itself. The court noted that "[w]here the trial testimony amply demonstrated that both parties to the contract held different views as to the amount owing, and where the amount could not be determined by reference to the parties' agreement, the debt is unliquidated." 515 N.E.2d at 956.

In the instant case, we find that the amount due under the contract was not clear at the time of the breach. There was no market value as a reference point since damages were based upon prospective lost profits. The prices were available to Winters, but the figures of Cyril Bath's manufacturing cost were known only to Cyril Bath at the time of the breach. As such, Winters was incapable of calculating the damages with any reasonable degree of certainty. Further, the parties have continued to argue over the proper method for computation of per unit cost, an essential determinant of the total damages. It was not possible for Winters to pay Cyril Bath damages when there was a good faith dispute over the amount of damages. Thus, we conclude that the district court abused its discretion by awarding prejudgment interest.

## V.

Accordingly, for the foregoing reasons, the judgment of damages of the district court is AFFIRMED, and the order for prejudgment interest is REVERSED.