McLIN, Exrx., Appellee,

v.

LEIGH et al., Appellants.

[Cite as *McLin v. Leigh* (1991), 74 Ohio App.3d 127.]

Court of Appeals of Ohio,
Montgomery County.

No. CA 12229.

Decided May 15, 1991.

128

*Fred M. Izenson,* for appellee.

*Gary W. Gottschlich,* for appellants.

———————

WOLFF, Judge.

William Leigh and Madden, Inc. ("Leigh") appeal from two judgments rendered by the trial court on April 20, 1990. The first judgment awarded C.J. McLin, Jr. $5,892.40, which represented the net sum of indebtedness due to him from Leigh on a promissory note, after two debts McLin owed Leigh had been set off. The second judgment denied Leigh's request that prejudgment interest be added to the debts McLin owed him.

McLin and Leigh had been long term business associates in various business ventures. This appeal concerns the disposition of three debts between the two parties which arose in the course of their various business dealings.

The first debt arose from Leigh's failure to pay off a promissory note held by McLin. In 1968, McLin and Leigh formed Madden, Inc., an Ohio corporation. McLin relinquished his interest as a shareholder in Madden, Inc. in 1979, at which time the corporation redeemed all of McLin's shares of stock. At the time of the redemption, McLin and Leigh were the sole shareholders. As part of the redemption transaction, McLin and Madden, Inc. executed a series of agreements. Madden, Inc. executed a promissory note in the amount of $25,000 to be paid to McLin in three installments over a period of three years. The final installment required Madden, Inc. to pay McLin $10,000 in June 1982. Leigh executed an agreement guaranteeing the corporation's performance on the note. McLin executed an agreement entitled a General Release and Indemnification Agreement under the terms of which McLin agreed to indemnify and hold harmless Madden, Inc. and Leigh from any potential increase in the corporation's tax liability which might have accrued if the Internal Revenue Service ("IRS") disallowed certain expenses claimed on the corporate tax return. McLin brought suit against Leigh to recover on the note after Madden, Inc. and Leigh defaulted on the final payment.

A second debt arose from the foreclosure sale and repurchase by McLin of a piece of real property which had been jointly owned by McLin and Leigh as partners in Leigh–Lin Partnership. A foreclosure action was filed against the property for the partnership's default on property taxes. At the subsequent sheriff's sale held June 3, 1983, the property was sold for $1,576.45 to McLin. Leigh, by counterclaim, alleged he was entitled to be compensated for his one-half ownership interest in the property. He argued that under Ohio law, a tenant in common is not permitted to assert a title, against his former co-tenant, for property he acquired at a sale for taxes. He claimed that the

purchase in such a case inures to the benefit of a joint owner, and the purchaser is considered to hold the property in constructive trust for the other co-tenant who is thus entitled to share equally in the fair market value of the property.

Before trial, the parties entered a series of stipulations regarding each party's indebtedness. Stipulation No. 15 set forth the parties' agreement as to the valuation of Leigh's interest in the property if the court were to determine that Leigh was entitled to recover on that aspect of his counterclaim.

"15. If the court finds for Leigh, he is entitled to one-half of the fair market value of the property less one-half of the following:

"A. McLin's purchase price ($10,000 less $788.23 = $9,211.77),

"B. Repairs made by McLin from April 28, 1983 through the date of the loan application.

"Said amounts under subparagraphs A & B to be with or without interest as determined by the court."

The parties had valued Leigh's one-half ownership interest at $10,000 based on a $20,000 fair market value. The property had been valued at $20,000 for purposes of a property development loan application filed by McLin after he acquired the property. Since the court ultimately determined that Leigh was entitled to prevail on this issue, the second debt at issue herein is the $9,211.77 McLin owed Leigh.

The third debt, which Leigh also asserted in his counterclaim, arose from the disallowance by the IRS of a $6,000 expense deducted by Leigh on its corporate tax return. According to Leigh, the $6,000 was expended for personal accounting fees rendered on McLin's behalf in 1976. Leigh argued that since the IRS had disallowed the expense, McLin was obligated to indemnify Leigh for the tax consequences stemming from the disallowance. The trial court determined that McLin owed Leigh $6,000 on this personal accounting fee and McLin has not appealed.

In a decision and order rendered on January 20, the trial court determined that the parties were entitled to offset these three debts against each other's outstanding indebtedness. The court determined that Leigh owed McLin $10,000 which was outstanding on the promissory note and that, pursuant to stipulation No. 15, Leigh was entitled to recover $9,211.77 from McLin to reflect his ownership interest in the property less the cost of repairs made to the property, and that Leigh was entitled to set off the $6,000 expense from what he owed McLin on the promissory note. The trial court also held that as of the date of the decision, the cost of repairs was incapable of calculation and

ordered the parties to submit evidence as to repairs. The court also ordered the parties to submit written calculations setting forth the amount due on the note, together with accrued interest, after the two debts McLin owed Leigh had been offset.

On November 8, 1989, a hearing was held to determine what the net sum due was after each party had offset his indebtedness against what was due him. The court made the calculation as to the cost of repairs since the parties had failed to submit calculations as previously ordered. The court then determined the share of the repair expenditure attributable to Leigh per stipulation No. 15, and finally calculated the net sum due as follows:

" * * * [The repair expense] goes from June 1, 1983 through August 18, 1987 and then, continues with a September 8, '87 countywide development loan financed at 52,000. I don't think any of those following September 8, '87 are proper to be charged or accredited against the repairs for which Mr. Leigh is responsible to the amount of fifty per cent. As I calculated those expenditures through Auguest [sic] 18, '87, the total is $3,211.05. One-half of that figure would be $1,605.52, so my calculations show that Mr. Leigh is entitled to 10,000 which is half of the value of the land and building minus one-half the tax costs which is 788.23, less half the repairs 1605.52, which leaves a balance owing or balance that Mr. Leigh is entitled to of $7,606.25; and in considering that Mr. Leigh is obligated to Mr. McLin for $10,000.00 plus interest from July 1, '82, minus the $6,000.00 figure for the improper charge for accounting, that leaves Mr. Leigh an abligation [sic] to Mr. McLin of 4,000 plus appropriate calculation of interest. Comparing what Mr. Leigh ie [sic] entitled to and what he is obligated to Mr. McLin, I have a net balance of Mr. Leigh entitled to $3,606.25, which should be then decreased by the amount of interest calculation."

After this pronouncement, Leigh asserted that he was entitled to accrue prejudgment interest of ten percent pursuant to R.C. 1343.03(A) on the amounts for which McLin was indebted to him. Leigh also objected to the court's determination as to the repair expenditure on the grounds that there was no proof that such repairs had actually been made to the property. Leigh proposed that the proper method for making the setoff and interest calculations was to start with the $6,000 debt which arose in 1976, to accrue interest on $6,000 from January 1, 1977, until the date the second debt, *i.e.*, on the note, arose in 1982, and to set off the two amounts as of June 1982, leaving a balance due on the note. He proposed that interest should then be accrued on the balance remaining on the note to July 1, 1983, the date the third debt arose, *i.e.*, the date McLin acquired the property. He proposed that the court should then set off the amount then due on the note from the $9,211.77 McLin

owed Leigh for the real estate. This would have put McLin in a deficit position. Finally, Leigh proposed that interest should then accrue forward on the net final sum owed to him by McLin. These calculations, according to Leigh, were set forth in a letter dated May 16, 1989, which he sent to the court on June 14, 1989. However, this letter is not part of the record.

The court refused to summarily adopt Leigh's oral calculations and ordered the parties to submit written calculations as he first ordered in his January 20, 1989, decision. The record does not demonstrate that either party ever submitted written calculations. Following the hearing, McLin filed a motion to deny Leigh's prejudgment interest request, which Leigh had advanced at the November hearing. McLin's motion was directed toward the $6,000 debt he owed Leigh. McLin argued that the $6,000 debt was unliquidated prior to the court's determination that McLin was liable to Leigh for it, and thus prejudgment interest was improper under R.C. 1343.03(A).

The trial court agreed with this rationale and denied Leigh's request for prejudgment interest, and rendered a decision and order, together with a judgment entry, on April 20, 1990, holding as follows:

"The Court finds that it made an independent finding that the $6,000 expense paid by Madden, Inc. for accounting services was provided to C.J. McLin, Jr. personally. Other items claimed by William Leigh as proper setoffs against his obligation to C.J. McLin have been disallowed due to William Leigh's failure to notify C.J. McLin of the IRS disallowance of expenses.

"* * *

"The Court determined pursuant to stipulation number 15 that Mr. McLin is entitled to recover one half the amount of repair made from April 28, 1983 through October 26, 1987. The allowable repairs total $5,549.57 and one half of that is $2,774.78. Therefore, Mr. Leigh is entitled to setoff [sic] $6,000 plus the difference between $9,211.77 and $2,774.78 or a total setoff of $12,436.99 against his obligation to C.J. McLin of $18,329.39, which latter sum includes interest through November 8, 1989.

"It is hereby ORDERED that judgment be awarded to the plaintiff, C.J. McLin, Jr. and against the defendant, William A. Leigh in the sum of $5,892.40 together with the cost of this action."

On appeal, Leigh has advanced five assignments of error, three of which challenge the propriety of the trial court's calculations regarding setoff and interest, and two of which challenge the trial court's judgment that McLin was not liable for the increased tax liability because he never received notice of the

IRS disallowance as was required by the Indemnity Agreement. We first address the second assignment of error.

### Second Assignment of Error

"The trial court erred in reducing the amount to which Leigh is entitled by way of McLin's purchase of lot No. 6407 by one-half of the amount of repairs allegedly made by McLin."

 In this assignment, Leigh argues that the record is devoid of legally admissible evidence which would support the trial court's determination as to the cost of the repairs McLin allegedly made to the property. We agree and sustain this assignment for the following reasons.

Although stipulation No. 15 provided for a reduction in the debt McLin owed Leigh for the property to reflect Leigh's share of the repairs, the stipulation was silent as to the actual cost of the repairs. The court, in its April 20 judgment, ultimately calculated the cost of repairs to be $5,549.87. Our review of the record discloses that this calculation was not based on competent evidence.

It is true that, in his deposition, McLin testified that he had begun emergency repairs to the property immediately upon his acquisition of the property on June 14, 1983. He testified that the roof, back, and one side of the building were all destroyed, and he had to repair them immediately. At the time of his deposition, McLin identified several of the contractors who had performed the work, but could not specify the amount he paid to the contractors. Counsel for McLin subsequently provided the court with a schedule of expenditures incurred in repairing the property. This schedule, which was nothing more than a typewritten list, was attached to McLin's motion to deny Leigh's request for prejudgment interest, filed several weeks after the November hearing. The schedule of repairs was as follows:

| "7–15–83 | Bryant Contractors (Cement Supplies, Labor) | $2,749.57 |
|---|---|---|
| "6–7–87 | Tops Roofing, Inc. (Roofing, Gutter) | 1,000.00 |
| "5–18–87 | Tops Roofing, Inc. (Roofing) | 1,800.00 |
| | | $5,549.57" |

There was no accompanying affidavit based on personal knowledge averring to the truth of the allegations, nor were there any invoices from the contractors corresponding to the claimed expenses. Without more, the list of expenditures proffered by counsel was simply an unsworn, unsupported allegation which was insufficient, as a matter of law, to prove the matters purported to be shown thereby, i.e., the cost of repairs. Leigh brought these deficiencies to the trial court's attention in timely fashion.

It appears that no competent evidence was submitted as to the actual cost of repairs. Accordingly, the court erred when it concluded that the cost of repairs was $5,549.57.

The second assignment is sustained.

### First Assignment of Error

"The trial court erred as a matter of law in denying appellants' request for an award of prejudgment interest against appellee."

Whether a party is entitled to prejudgment interest depends upon whether the underlying debt is liquidated. *Nursing Staff v. Sherman* (1984), 13 Ohio App.3d 328, 330, 13 OBR 406, 409, 469 N.E.2d 1031, 1034. A debt is liquidated if the amount due is certain and ascertainable. *Mahon–Evans Realty, Inc. v. Spike* (1986), 33 Ohio App.3d 268, 271, 515 N.E.2d 953, 956. Where the dispute is over liability itself but the amount due is not in dispute or it is easily ascertainable, then the running of prejudgment interest is not delayed because the debtor denies owing the debt, and thus the interest accrues as of the date the debt became due and payable. *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 60, 22 O.O.3d 47, 48, 426 N.E.2d 526, 527. Once the debt is determined to be liquidated, R.C. 1343.03(A) automatically bestows a right to statutory interest as a matter of law. *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 168, 542 N.E.2d 654, 662.

R.C. 1343.03(A) provides, in pertinent part, as follows:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

In this case, the evidence reasonably supported the trial court's determination that only the debt from Leigh to McLin was liquidated.

The amount due on the promissory note was liquidated since the amount due was always ascertainable. The parties even stipulated that Leigh owed McLin $10,000 at a designated rate of interest on the note. There is no dispute that the note became due in June 1982. Since the note specified a rate of interest of one percent over the prime rate, the ten percent rate of R.C.

1343.03(A) does not apply to the note. Rather, the contract interest rate applies.

██ The same is not true with respect to the $9,211.77 debt which the court determined McLin owed Leigh. Stipulation No. 15, which governed the calculation of the amount due Leigh from McLin with respect to Leigh's ownership interest in the property, stated that the issue of whether to award interest on the debt was left to the trial court's discretion. We conclude from our reading of the stipulation that the parties intended to leave the decision as to an award of prejudgment interest on this debt to the judge. Given that the cost of the repairs was genuinely in dispute, we find no abuse of discretion in not awarding prejudgment interest on the value of the property. The trial court could have reasonably concluded that since the cost of repairs was in dispute, the debt was not liquidated until the court ascertained what the repairs were. Furthermore, and notwithstanding McLin's failure to prove the cost of repairs, the parties appear to have agreed that repairs were made.

██ Although the amount of the accounting fee was certain, and the date it came into existence was certain, Leigh's counterclaim did not seek $6,000, but rather the amount of increased corporate tax liability occasioned by the IRS's disallowance of Madden, Inc.'s $6,000 deduction. This amount was not certain and ascertainable until it was determined by the court. It would be indeed unlikely that the corporate tax liability was increased by $6,000 by virtue of the disallowance of a $6,000 claimed deduction. Nevertheless, the court found that McLin owed Leigh $6,000 and McLin did not appeal. Notwithstanding McLin's acceptance of the trial court's ruling, the debt was nevertheless unliquidated until it was found by the court to be $6,000. The trial court thus did not err in declining to award prejudgment interest on the $6,000 debt from McLin to Leigh.

The first assignment is overruled.

### Third Assignment of Error

"The trial court committed prejudicial error in calculating the net sum due either McLin or Leigh by failing to properly account for appellants' setoffs."

██ The thrust of Leigh's argument in support of this assignment is that the court erred by offsetting the parties' debts at the time the judgment was rendered instead of at the time the debts arose. A review of the record discloses that when the court determined that McLin was entitled to recover $5,894.40, it merely tallied up what each party owed the other as of the date of judgment and awarded the judgment to whoever had the positive balance.

According to Leigh, the parties' debts to each other should have been set off as of the time each was indebted to the other. Leigh offers no authority in support of this approach, and research on the matter neither supports nor contradicts Leigh's position. Research does reveal that the right to setoff need not be independently pleaded. We think the suggested approach is sound.

We view setoff as a self-help remedy which arises as soon as each party is indebted to the other. In this case, Leigh's right of setoff arose on July 1, 1982, when Leigh became indebted to McLin, who had been indebted to Leigh since 1976; McLin's right of setoff arose July 1, 1983, when he again became indebted to Leigh, who had been indebted to McLin since 1982.

Thus, in determining damages, a trial court should set off the parties' debts to each other as of the first date that each party is indebted to the other. The trial court did not do so in this case.

The following chart illustrates each party's indebtedness, applies Leigh's theory of setoff, calculates and adds prejudgment interest where appropriate, and arrives at the balance due Leigh as of April 20, 1990.

| | | Leigh Owes McLin | McLin Owes Leigh |
|---|---|---|---|
| 1. | 1976 Accounting Fees paid on behalf of McLin | | $6,000.00 |
| 2. | Balance as of 6-30-82 | | $6,000.00 |
| 3. | Promissory Note debt owed 7-1-82 | $10,000.00 | |
| 4. | Balance due on note as of 7-1-82 | $ 4,000.00 | |
| 5. | Interest at 1% over prime (18%) as specified on Note on balance of Promissory Note debt from 7-1-82 through 7-1-83 | $ 720.00 | |
| 6. | Balance due on Note as of 7-1-83 | $ 4,720.00 | |
| 7. | One-half of value of Lot No. 6407, Dayton | | $9,211.77 |
| 8. | Balance as of 7-1-83 | | $4,491.77 |
| 9. | Net sum due to Leigh as of 4-20-90; no 1343.03(A) prejudgment interest | | $4,491.77 |

The third assignment is sustained.

The fourth and fifth assignments pertain to the issue of whether the trial court erred by finding (1) that McLin had no notice of the IRS's disallowance of certain expenses deducted on the corporate tax return, and thus (2) a hearing on the issue of an increase in tax liability was unwarranted.

### Fourth Assignment of Error

"The trial court erred as a matter of law in denying Leigh and Madden (an evidentiary hearing) on the issue of whether notice of the IRS tax assessment was given to McLin as provided for in the indemnity agreement."

In this assignment Leigh challenges the trial court's determination that McLin never received notice of the IRS tax assessment wherein improper deductions taken on the corporate tax return were disallowed. Under the terms of the Indemnity Agreement executed in connection with the stock redemption transaction, McLin agreed to indemnify and hold harmless Leigh from any and all liability for the increase in taxes arising out of the IRS's disallowance of deductions taken for payments made to McLin, or for McLin's benefit. Pursuant to the Indemnity Agreement, McLin agreed to pay the increased taxes which arose from any disallowance, provided Leigh promptly notified McLin as to the assessment so that McLin would have the opportunity to defend the assessment.

The parties stipulated that the Indemnity Agreement would govern the adjudication of Leigh's entitlement to indemnification for the income tax assessment. The pertinent stipulations provided that:

"17. The parties agree that the General Release and Indemnification Agreement executed October 29, 1979 governs the transaction. The parties further agree that the issue to be determined by the court concerns McLin's right to notice and opportunity to defend as set forth therein.

"18. Preserved for later determination by the Court will be the issue of the amount of any increase in tax liabilities (including interest and penalties) due Madden from McLin under the General Release and Indemnification Agreement, should the Court rule that the notice and opportunity to defend provision of said Agreement was satisfied."

Therefore, whether McLin was liable for the increased taxes as provided for in the Indemnity Agreement depended on whether McLin received notice of the assessment. The stipulations make it clear that the court would make a finding on the notice issue. In the January 20, 1989 decision, the trial court found that Leigh had failed to provide McLin with notice of the IRS tax assessment. The court held:

"The Defendants have asserted and testified that certain items of expense were disallowed by the Internal Revenue Service. However, no written documentation has been presented to the Court to corroborate the disallowance. In addition, the Defendants have failed to establish that they notified C.J. McLin of the particular disallowances. William A. Leigh claims to have

notified [McLin] by telephone, but the Plaintiff denies this, and Mr. Leigh does not recall whether Mr. McLin was notified in writing."

On appeal, Leigh argues that it was error for the court to summarily decide the notice issue without first conducting an evidentiary hearing on the matter. We disagree.

On December 5, 1988, the parties submitted stipulations to the court, the preamble of which is as follows:

"Now come the parties, in the interest of judicial economy, who partially define and *submit* the claims and issues included in cases numbered 88–404 and 88–738 and who *partially submit* (subject to certain reservations mentioned herein) the matters in dispute *on the* pleadings, and exhibits attached thereto, the depositions of C.J. McLin, Jr. and William A. Leigh (including exhibits) and the following stipulations[.]" (Emphasis added.)

Although there was no evidentiary hearing on the notice issue, there is nothing in the stipulations which specifically required an evidentiary hearing to determine whether notice was given. Indeed, the parties appear to have submitted the matter for decision in accordance with the above-quoted stipulations preamble, and stipulations Nos. 17 and 18, *supra*. The only possible hearing requirement was that set forth in stipulation No. 18 which implied that a hearing on McLin's potential tax liability would be appropriate if the court determined the condition precedent of "notice" had first been satisfied. Therefore, our inquiry turns to whether the trial court properly concluded that McLin never received notice of the tax assessment.

The issue of whether McLin ever received notice posed a factual query. Leigh claims that the trial court erroneously based its determination that McLin had not received notice of the assessment solely on stipulation No. 17. There is nothing in stipulation No. 17 upon which the court could make a determination of notice. Stipulation No. 17, particularly when read in conjunction with stipulation No. 18, merely states, in effect, that the court will determine whether McLin ever received notice, but provides no guidelines as to how the determination was to be made, or information bearing on the issue of notice.

The record does not support Leigh's contention that the court relied on stipulation No. 17 when it determined that McLin had never received notice of the tax assessment. The court, in its January decision, stated that it based its determination on "testimony." The testimony the court is referring to is apparently that contained in the filed depositions of Leigh and McLin, which were submitted to the trial court with the stipulations. A review of the depositions reveals that even Leigh was not sure whether he ever notified McLin of the assessment, although he thought he had informed McLin over

the phone. McLin testified that he had not spoken to Leigh in years, other than to exchange light conversation, and never received such notice in any of these conversations.

In view of this, we find no abuse of discretion in the court's factual finding that McLin never received notice. There was competent, credible evidence in the form of the parties' depositions which supported the court's judgment on the issue. The court could have reasonably believed McLin's testimony on the matter and disbelieved that offered by Leigh. A reviewing court may not reverse a judgment supported by some competent, credible evidence. *C.E. Morris v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Since the court did not err in determining that no notice had been given, it likewise did not err by refusing to hold a hearing on the amount of McLin's tax liability under the indemnity agreement since the condition precedent for the hearing was not satisfied.

The fourth assignment is overruled.

### Fifth Assignment of Error

"The trial court erred as a matter of law in denying Leigh and Madden a hearing on the issue of the increase in tax liabilities (including interest and penalties) which resulted from payments made on behalf of McLin."

In this assignment, Leigh argues that notwithstanding the failure to give McLin the proper notice, McLin was nonetheless not absolved of his liability under the Indemnity Agreement.

Leigh claims that an indemnitee's failure to give notice of a claim to an indemnitor is not *per se* fatal to the indemnitee's claim. However, Leigh admits that no Ohio court has ever so ruled. He cites instead authority from several other jurisdictions which have adopted the position that the effect of an indemnitee's failure to give notice to the indemnitor of a claim is to shift the burden of proof to the indemnitee to prove that the indemnitor had no defense to the indemnitee's claim.

We find it unnecessary to reach the merits of this argument. The Indemnity Agreement and the stipulations respectively made it clear that the parties contractually established that proper notice of the tax assessment was a condition precedent to McLin's tax liability, and to the hearing requirement on the issue of McLin's tax liability. We have already discussed the failure to notify in connection with the disposition of the fourth assignment.

The fifth assignment is overruled.

The judgment of the trial court will be reversed. Pursuant to App.R. 12, we will render the judgment the trial court should have rendered in favor of William A. Leigh and Madden, Inc. in the amount of $4,491.77 as of April 20, 1990, together with interest on the judgment from said date, and costs.

*Judgment reversed.*

BROGAN and GRADY, JJ., concur.