47 F.3d 1167
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ADVANCED PLASTICS CORPORATION, Plaintiff-Appellant,
v.
WHITE CONSOLIDATED INDUSTRIES, INCORPORATED d/b/a/
Frigidaire Company, Defendant-Appellee.
 No. 93-2155.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1995.
 
 Before: SUHRHEINRICH and BATCHELDER, Circuit Judges; and McCALLA, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Advanced Plastics Corporation, appeals the district court's grant of summary judgment in favor of the defendant-appellee, White Consolidated Industries, Inc., d/b/a Frigidaire Co, in Advanced Plastics' action claiming breach of contract and promissory estoppel. For the following reasons, we affirm.
 
 I.
 
 2
 Advanced Plastics manufactured plastic refrigerator parts for White Consolidated, a refrigerator manufacturer. The parties used blanket purchase orders and releases to transact their business. When White Consolidated wanted a part from Advanced Plastics, it would submit a request for a quotation. This quotation request included the part name, the part number, and an estimate of the yearly usage. Advanced Plastics would respond to the quotation request with a price quote. If White Consolidated decided to purchase the part at this price, it would submit a blanket purchase order that specified the part but not the quantity. White Consolidated then would submit individual releases to specify the quantity desired at a particular point in time.
 
 
 3
 Since 1985, the parties used this procedure for the purchase of Line 1 parts. In 1989, White Consolidated decided to move its tooling for Line 1 parts to another manufacturer and Advanced Plastics consented to the move. In May 1991, White Consolidated began to purchase a new part, the Line 5 part, from Advanced Plastics, using the same contractual procedure. Eventually, White Consolidated decided to consolidate its supplier base by moving all Line 1 and Line 5 tooling and manufacturing from Advanced Plastics to another supplier. On April 28, 1992, White Consolidated informed Advanced Plastics of this decision. By June 25, 1992, Advanced Plastics had filled all outstanding releases and White Consolidated had paid for all parts and raw materials.
 
 
 4
 Advanced Plastics filed this action in the district court, claiming breach of contract and promissory estoppel. The district court granted White Consolidated's motion for summary judgment on all claims and this timely appeal followed.
 
 II.
 
 5
 This court reviews a grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir. 1993). A court should grant summary judgment only if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). This court examines all evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). We agree with the district court that the facts material to the claims in this case are not in genuine dispute.
 
 
 6
 On the breach of contract claim, we agree with the district court's conclusion that White Consolidated performed all its obligations under the contract and the contract simply expired. Under Paragraph 2 of the "Release Terms and Conditions," White Consolidated had no obligation to pay for parts manufactured more than 45 days in advance of delivery date in the Release:
 
 
 7
 DO NOT FABRICATE PARTS REQUIRED FOR EACH SHIPMENT MORE THAN 45 DAYS IN ADVANCE OF SPECIFIED DELIVERY DATE. You should release materials from your vendors for shipment to your plant only as necessary to maintain the shipping schedule as shown on this release.
 
 
 8
 Under Paragraph 9 of the Release Terms and Conditions, if White Consolidated cancelled or reduced a quantity ordered in a release, it had to pay for only those raw materials or works-in-progress required to meet the delivery date for 60 days after the notice of reduction or cancellation. Paragraph 9 states,
 
 
 9
 If at any time the quantities ordered herein are by us reduced or cancelled, we neither have nor assume any liability or obligation for damages nor for value of materials fabricated or partially fabricated in quantities in excess of our delivery schedule for the sixty-day period immediately following our notice of reduction or cancellation.
 
 
 10
 Finally, the quotation requests included a disclaimer: "Estimated yearly usage is estimate only. Do not construe as firm commitment." Therefore, White Consolidated had no contractual obligations to purchase Line 1 or Line 5 parts after it stopped issuing releases and met the obligations of Paragraphs 2 and 9 of the Release Terms and Conditions.
 
 
 11
 Advanced Plastics argues that the contract did not expire because it was a requirements contract and Michigan law requires a buyer subject to a requirements contract to purchase its actual good faith requirements. Mich. Comp. Laws Ann. Sec. 440.2306(1) (West 1967). As proof of the existence of a requirements contract, Advanced Plastics points to the phrase "Seller agrees to furnish Buyer's requirements" in Paragraph 4(a) of the "Blanket Purchase Order Terms and Conditions." However, the passage in full reads, "Seller agrees to furnish Buyer's requirements for the goods or services covered by this Purchase Order to the extent of and in accordance with ... Buyer's written instructions." (Emphasis added). There is no dispute that those "written instructions" were the releases issued by White Consolidated. Furthermore, Paragraph 4(b) of the same document states that "Buyer shall have no obligation to honor invoices for goods or services fabricated, rendered, or delivered other than according to the ... written instructions of Buyer pursuant to (a) above." Paragraph 4(c) states that "Buyer shall be entitled to make other purchases at its discretion in order to assure its production operations and maintain reasonable alternative sources of supply." The language of this document clearly demonstrates that the parties intended for White Consolidated to purchase quantities of parts only according to its releases, and not according to its requirements.
 
 
 12
 The testimony of the President of Advanced Plastics, Mr. Printz, proves nothing. Advanced Plastics' citations to the correspondence between the parties -- mostly consisting of White Consolidated's waxing optimistic about its business relationship with Advanced Plastics -- also fail to prove that the parties agreed to a requirements contract.
 
 
 13
 The parties agree that a requirements contract does not necessarily compel an agreement that the buyer purchase exclusively from the seller. At a minimum, however, the buyer must agree to purchase a portion of its requirements from the seller and the contract must set forth a specific amount of goods. White Consolidated never made any such agreement in this case. In City of Louisville v. Rockwell Mfg. Co., 482 F.2d 159 (6th Cir. 1973), this court held that a requirements contract included an agreement stating that the seller would "furnish part of the [buyer's] requirements for parking meters" for one year and listing a quantity of "approximately 7650 parking meters." Id. at 161, 164-65. In Cyril Bath Co. v. Winters Indus., 892 F.2d 465 (6th Cir. 1989), this court held that the buyer "implicitly" promised to purchase its requirements from the seller because of the "specificity of the number of [goods] in the contract" and the seller's knowledge of the buyer's requirements. Id. at 466-67. Overall, the evidence in the case before us today convincingly demonstrates that the parties did not enter into a requirements contract.
 
 
 14
 The district court also held, in the alternative, that if White Consolidated terminated the contract, it still did not breach the contract. Given our conclusion, we need not reach that holding.
 
 III.
 
 15
 The district court properly dispensed with the promissory estoppel claim because the parties did not dispute the existence of a contract. Advanced Plastics alleges that White Consolidated strategically conceded the existence of a contract to foreclose Advanced Plastics' promissory estoppel claim. A review of the record demonstrates that White Consolidated genuinely agreed that a contract existed. Advanced Plastics asserts that, to the extent the district court held that the parties engaged in a series of individual buy-sell transactions or that the contract was illusory for lack of mutuality, the court should employ promissory estoppel to determine the actual contract and obligations. Aside from Advanced Plastics' lack of authority for this proposition, its most obvious defect is that the district court never advanced this holding but explicitly found that a single, valid contract existed. It is not necessary to construct an "actual contract."
 
 IV.
 
 16
 For the foregoing reasons, the district court's grant of summary judgment in favor of the defendant is AFFIRMED.
 
 
 
 *
 The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation