William C. MOORE, Plaintiff–Appellant,

v.

Troy E. HOLBROOK; R. Ginn, Sgt.;
John Burton, Sgt., Defendants–
Appellees.

No. 92–3334.

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1993.

Decided Aug. 16, 1993.

William C. Moore (briefed), pro se.

Thomas G. Eagle (argued and briefed),
Landen & Eagle, Franklin, OH, for plaintiff-
appellant.

Christian B. Stegeman, Asst. Atty. Gen.
(argued and briefed), Michael James Har-
mon, Sr. Asst. Atty., Cincinnati, OH, for de-
fendants-appellees.

Before: JONES and BATCHELDER,
Circuit Judges; and ENGEL, Senior Circuit
Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant William Moore appeals a district court judgment dismissing his civil rights action filed pursuant 42 U.S.C. § 1983 against multiple prison guards who he claims assaulted him. He argues that the district court based its opinion on documents that the defense submitted in violation of FED. R.CIV.P. 56(e) and that there were genuine issues of material fact that prevented the issuance of summary judgment. He also contends that the district court erred by concluding that the injuries he received from the assaults were not serious enough to constitute a constitutional violation.

On April 26, 1990, a prison disturbance occurred at the Southern Ohio Correctional Facility where Moore was incarcerated. The disturbance consisted of inmates flooding the cellblock, starting fires, and throwing objects at inmates and prison officials. During the disturbance, Moore received various injuries. The parties dispute the circumstances surrounding Moore's injuries.

On January 23, 1991, Moore filed a civil rights complaint against defendants Holbrook, Ginn, and Burton pursuant to 42 U.S.C. § 1983. Moore alleged that a day after the disturbance, April 27th, the three defendants came to his cell. He was ordered to place his hands outside the cell so he could be handcuffed. Moore complied with the request. After he was handcuffed, Moore contends that Holbrook then grabbed him by the collar and punched him in the face. Defendants Burton and Ginn then placed their "PR–24's" (although not identified in the record, these objects appear to be a type of stun gun) between Moore's arms and escorted him to a stairway. At this point Holbrook punched Moore in the mid-section. After Moore bent over due to the blow, Holbrook proceeded to punch him on the head and face. Following this beating, Ginn and Burton dragged Moore up the stairs and then held Moore down while Holbrook again kicked and punched Moore in the head and face. Moore claims that as a result of the incident, he suffered bruises to the head, face, and upper body. Moore claimed that defendants' actions violated his Eighth Amendment right to be free from cruel and unusual punishment.

The defendants moved for summary judgment. In their documentation to support their motion, defendants provided a different version of the incident. According to defendants, the major disturbance was still in progress on April 27th. Moore was one of several inmates involved in the disturbance. After complying with the order to be handcuffed, and while being escorted out of the area, Moore turned to Holbrook and grabbed his shirt collar. Burton and Ginn then used their PR–24's in a "come-a-long technique" in an attempt to control Moore. Holbrook grabbed the collar of Moore's jumpsuit in an attempt to restrain him. After being restrained, Moore was escorted to a set of stairs. As he was climbing the stairs, Moore slipped and fell on top of Holbrook. As a result of the incident, both Holbrook and Ginn received injuries which required them to seek medical attention and leave from their employment.

In his affidavit supporting his motion for summary judgment, Moore disputes defendants' version of the facts. In addition, he denied any involvement with the disturbance.

The district court accepted defendants' version of the facts erroneously stating that defendants' position was undisputed. The court then concluded that defendants' actions were justified and no Eighth Amendment violation had occurred.

 This court's review of the grant of summary judgment is de novo. See EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

For the first time on appeal, Moore contends that the district court erred by relying on documents that defendants attached to their motion for summary judgment. Moore states that the documents are unsworn and unauthenticated. As such, they do not satisfy the requirements of FED.R.CIV.P. 56(e).

Rule 56(e) states, in part, that affidavits supporting a motion for summary judgment must: (1) be made on personal knowledge; (2) set forth facts as would be admissible in evidence; and (3) show that the affiant is competent to testify on the matters contained in the affidavit. Furthermore, sworn or certified copies of all documents referred to in an affidavit must also be attached to the affidavit. This court has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded. *See Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968–69 (6th Cir. 1991); *State Mutual Life Assurance Co. of America v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir.1979).

The documents in question consist of photocopies of Moore's prison medical records, the investigation report of the incident made by prison officials, statements made by witnesses during the investigation, and a prior unpublished district court opinion made in an unrelated case. The documents are neither sworn nor certified.

█ Although the documents do not satisfy the requirements of Rule 56(e), the argument, nonetheless, does not justify reversal of the district court's judgment. Moore failed to object to the documents inclusion in defendants' motion for summary judgment. Because Moore did not raise the issue before the district court, it is not reviewable on appeal. *See Taft Broadcasting Co. v. United States,* 929 F.2d 240, 243–45 (6th Cir.1991). Although *Taft* recognized an exception to this rule in order to avoid injustice, *id.* at 244, the exception does not exist in this case. Accordingly, this issue is not reviewable on appeal. *Id.* at 243–44.

Moore also argues that the district court erred by granting summary judgment for the defendants. He contends that there are several genuine issues of material fact that prevents the issuance of summary judgment.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56. This court reviews the district court's grant of summary judgment *de novo, EEOC v. University of Detroit,* 904 F.2d at 334, viewing all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. However, in responding to a summary judgment motion, the non-moving party cannot rest on its pleadings but must present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The district court erroneously concluded that defendants' recitation of the facts was undisputed. After the defendants moved for summary judgment, Moore filed a cross-motion for summary judgment attaching a sworn affidavit to his motion. The affidavit explicitly contradicted defendants' version of the facts. The cross-motion also served as a reply to defendants' motion.

In examining the two versions of the incident, numerous issues of fact exist that prevent the granting of summary judgment for the defendants. First, Moore states that the prison disturbance occurred on April 26, 1990. The following day, April 27th, he was assaulted by the defendants. In contrast, defendants claim that the disturbance was in progress on April 27th and as a result, Moore was being removed from the area. This dispute is material in that it strikes at the heart of the district court's decision. The district court found that the assault occurred during the prison disturbance which permitted the defendants to use more force than normally necessary to control Moore, citing *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) and *Whitley v. Albers,* 475 U.S. 312, 320–21,

106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986).

■ In order to constitute a claim under the Eighth Amendment, the offending conduct must reflect an "unnecessary and wanton infliction of pain." *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)). Such a claim has both an objective and subjective component. *Wilson v. Seiter,* — U.S. —, —, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

The objective component of an Eighth Amendment claim requires that the pain be serious. *Id.* The Supreme Court addressed the objective component in *Rhodes v. Chapman,* 452 U.S. 337, 348–49, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), noting that although double celling of inmates may be painful, it did not concern a deprivation of "the minimal civilized measure of life's necessities." Thus, no Eighth Amendment violation occurred. *See Wilson,* — U.S. at —, 111 S.Ct. at 2324.

The subjective component, in contrast, constitutes the deliberate indifference standard of *Estelle v. Gamble. Id.* at — – —, 111 S.Ct. at 2324–27. The subjective component provides that the offending, non-penal conduct be wanton. *Id.* at —, 111 S.Ct. at 2326.

■ The subjective component does not have a fixed meaning. However, under the circumstances of heightened tensions, as in prison disturbance cases, wantonness constitutes malicious and sadistic acts whose very purpose is to inflict harm. *Id.* No actual injury needs to be proven to state a viable Eighth Amendment claim. *Boretti v. Wiscomb,* 930 F.2d 1150, 1154–55 (6th Cir.1991).

The day of the disturbance is critical in this case. According to Moore, the disturbance had ceased the day before the assault. If this is true, the Supreme Court's Eighth Amendment analysis for prison disturbances is not applicable. In contrast, if the disturbance existed when the assault occurred, the district court's analysis under *Hudson* and *Whitley* would be correct.

Another decisive issue of material fact that exists concerns the incident itself. Moore proffered evidence that he was subject to numerous beatings without reason. Defendants countered with evidence that Moore became disruptive and that his injuries were a result of a fall. Whether or not Moore was a victim of an assault is critical to his Eighth Amendment claim.

■ To determine whether a claim of assault rises to a level of constitutional magnitude, a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injury. *See Whitley,* 475 U.S. at 320–22, 106 S.Ct. at 1084–86. The motivation of an assault is also relevant to an Eighth Amendment analysis. As the Supreme Court stated in *Whitley:* "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" 475 U.S. at 320–21, 106 S.Ct. at 1084–85. (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

■ Moore claims that he was savagely beaten on three occasions by the defendants for no reason. Under the *Hudson* and *Whitley* doctrines, Moore's evidence would appear to show that defendants acted in bad faith. In contrast, defendants essentially claim that Moore's injuries were a result of a fall. If defendants' allegations are true, Moore was not subjected to malicious or sadistic behavior. Thus, the cause of Moore's injury impacts his Eighth Amendment claim, thereby preventing the issuance of summary judgment for the defendants.

The final issue of fact that exists is Moore's role in the disturbance. The defendants contend that Moore participated in the disturbance. Moore disputes this claim. This fact is material for it reflects on the reasonableness of defendants' actions under the circumstances. As previously noted, defendants' actions are evaluated as to whether the force they used was a good faith effort to maintain or restore discipline, or was mali-

ciously and sadistically imposed to cause harm. *Hudson,* —— U.S. at ——–——, 112 S.Ct. at 999–1001. Because the question of whether Moore was a participant in the disturbance influences the legal analysis as to the reasonableness of defendants' actions, this disputed fact also prevents the issuance of summary judgment for the defendants. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Accordingly, for these reasons, the district court erred in granting summary judgment for the defendants.

Moore argues that the district court erred by concluding that because his injuries were *de minimis,* no Eighth Amendment violation occurred. In its opinion, the district court stated:

> The injuries plaintiff incurred was [*sic*] de minimis for purposes of Eighth Amendment analysis. Plaintiff's medical records indicate that he complained of soreness to his wrists, underarms, shoulders, and groin, and that he had an "edema" on his forehead, and that he did not dislocate or fracture his right shoulder. These constitute de minimis injuries for Eighth AMendment [*sic*] purposes because the need for Holbrook to use force was high and because plaintiff's temporary, de minimis injuries show that the amount of force used on plaintiff was neither inordinate nor excessive. Rather than indicating a malicious and sadistic attack by defendants, plaintiff's injuries indicate that defendants' tempered their response to fit the situation. Accordingly, defendants' first use of force constituted a good-faith effort to maintain or restore discipline, rather than a malicious and sadistic attack for the purpose of harming plaintiff. Plaintiff's claim that defendants beat him a second time when they reached the stairway does not establish a wanton and unnecessary use of force. Although the need for the use of force was not high during the second beating, plaintiff's injuries were again de minimis for the purposes of Eighth Amendment analysis. This is so because the temporary, de minimis nature of the injuries establishes that the amount of force

defendants used was minimal and restrained. (citations omitted)

(R.33; pp. 7–8).

In *Hudson,* the Supreme Court was presented with the issue of whether the "minor" injuries which Hudson received from prison guards failed to satisfy an Eighth Amendment claim. *Hudson,* —— U.S. at ——–——, 112 S.Ct. at 1000–01. The Court held that the extent of Hudson's injuries provided no basis for the dismissal of his claim. Rather, the proper analysis was whether the force that was applied was in a good faith effort to maintain or restore discipline, or was maliciously and sadistically invoked to cause harm. *Id.* at ——, 112 S.Ct. at 999. *See also Caldwell v. Moore,* 968 F.2d 595, 599–600 (6th Cir.1992); *Cornwell v. Dahlberg,* 963 F.2d 912, 918 (6th Cir.1992).

The district court properly summarized the analysis of an Eighth Amendment claim. Contrary to Moore's argument, the district court did not state that it was dismissing Moore's claim because his injuries were *de minimus.* The district court stated Moore's minor injuries indicated that he was not subjected to malicious and sadistic attacks given the situation that the defendants faced. Therefore, the district court did engage in the proper legal analysis in determining whether Moore stated an Eighth Amendment claim.

Even though the district court conducted the correct legal analysis, its decision is flawed. As previously discussed, genuine issues of material fact exist in this case. Therefore, although the district court conducted the proper legal analysis, its decision is based on disputed facts. As a result, the district court improperly granted summary judgment to the defendants.

Finally, Moore contends that his affidavit in support of his cross-motion for summary judgment is undisputed and, therefore, he is entitled to summary judgment as a matter of law. Moore bases this argument on the fact that defendants' evidence does not satisfy FED.R.CIV.P. 56(e) and thus cannot be used to defeat his motion. Moore did not object to defendants' evidence in the district court. Therefore, any objection to the evidence has now been waived and is not reviewable on

appeal. *Taft Broadcasting Co.,* 929 F.2d at 243–45. Furthermore, the evidence presented by both parties creates several issues of material fact that prevents either party from receiving summary judgment at this juncture of the litigation. The argument is without merit.

Accordingly, we REVERSE the judgment of the district court and remand the case for further proceedings consistent with this opinion.

BATCHELDER, Circuit Judge, dissenting.

## I.

Appellant Moore indeed has presented a version of the facts different from that of the defendant prison guards, and Moore has sworn to those facts. However, given modern summary judgment practice, parties' inconsistent accounts of an event may not warrant a trial. While in this case we must accord Moore, as a *pro se* litigant, leeway in prosecuting his case, *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980), his status does not exempt him from the requirements that he properly plead his case, make out an actionable cause, and show that if he proved all he claims, he would prevail at trial. Since I think that Moore has not shown that a genuine issue of material fact remains, I believe the majority errs in permitting this matter to proceed to trial.

## II.

In reviewing a summary judgment disposition, the Court of Appeals must determine whether the party opposing the motion has put forth evidence which, if produced at trial, would withstand the movant's motion for a directed verdict. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant must initially show the absence of a genuine issue of material fact. *Street,* 886 F.2d at 1479

(citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553). A material fact is one which might affect the outcome of the suit. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. However, the court must determine whether the evidence before it on a motion for summary judgment "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Street,* 886 F.2d at 1479 (citing *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512). Bare allegations by the nonmoving party will not alone suffice; they must be supported by sufficient evidence such that "reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Mitchell v. Toledo Hospital,* 964 F.2d 577, 581–82 (6th Cir.1992) (quoting *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512).

As the majority recognizes, this lawsuit becomes an entirely different proposition if the guards harmed Moore outside the context of a prison riot or disturbance. *Hudson v. McMillian,* —— U.S. ——, —— – ——, 112 S.Ct. 995, 998–99, 117 L.Ed.2d 156 (1992). According to the majority,

> Moore states that the prison disturbance occurred on April 26, 1990. The following day, April 27th, he was assaulted by the defendants. In contrast, defendants claim that the disturbance was in progress on April 27th and as a result, Moore was being removed from the area.... According to Moore, the disturbance had ceased the day before the assault.

Op. at 700. I do not believe that the record supports this summary of Moore's factual contentions, particularly with regard to the last sentence, which, if true, would radically alter the applicable legal standards for Moore's alleged mistreatment.

In filling out the form by which he filed his initial complaint, Moore simply described being taken from his cell and beaten repeatedly on the morning of the 27th, without mentioning whether any prison disturbance had happened or was ongoing at the time. Complaint filed Jan. 23, 1991 at 2. In the affidavit[1] attached to his "Motion to Stay in

---

1. In filing his "Motion to Stay in Court" and his cross-motion for summary judgment, Moore included affidavits which testified generally to the veracity of statements and memoranda he at-

Court" filed September 26, 1991, Moore stated:

> On April 26, 1990, their [sic] was a major disturbance in J–3 Cell Blaosk [sic] which started about 9:00 P.M. that night which Plaintiff had nothing to do with. On April 27, 1990, about 6:30 A.M. Officer Troy Holbrook came down the Range disrespecting inmates.

According to the affidavit, Holbrook and Moore exchanged words, whereupon Holbrook left and came back shortly thereafter with other guards, handcuffed Moore, extracted him from his cell and beat him, as alleged in the complaint. Even as I read this detailed affidavit generously, I cannot derive from it the allegation that the disturbance had *ended* by the time Holbrook showed up. Plaintiff merely denies being involved in the disturbance, which he says *started* at 9:00 p.m. the previous night.

Defendants, on the other hand, argue that the disturbance was ongoing at the time of the alleged beatings, and that Moore helped instigate the disturbance. Defendants' motion for summary judgment filed August 28, 1991 at 8. Extensive prison records of the incident which defendants appended to their motion consistently note that while trouble on the cell block started on the night of the 26th, the disturbance was ongoing, and indeed had become more serious, on the morning of January 27. Statements of prison employees present at the time consistently reported that the inmates had flooded the cell block range with water, requiring the prison staff to turn off the main water supply to the area, and that fires had been set and objects thrown.

Even if one denigrates the prison guards' after-the-fact reports as somehow self-serving,[2] the "staff visits" log, compiled contemporaneously with the events, provides a reliable source of evidence. Notations on that log indicate that by 9:17 p.m. on January 26, "all [the] ranges in [the] J3 [cellblock] were flooded" and the water was shut off. Joint Appendix at 62. Moore's transfer is noted as occurring the following day at 8:00 a.m. *Id.* From 8:27 a.m. through 9:03 a.m., a series of fires were set which had to be extinguished. *Id.* at 63. Records also indicate that "disruptive behavior started again" at lunch that day. Report filed by Paul Blair, Unit Manager at 2, Joint Appendix at 59.

As I have noted, the question as to when the disturbance ended is a material issue, since its resolution would "affect the outcome of the suit under governing law." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. In my estimation, however, the dispute is not "genuine"; the evidence is not "such that a reasonable jury could return a verdict for the nonmoving party," that is, for Moore. *Id.* The facts before us are "so one-sided that one party must prevail as a matter of law," that is, Holbrook and the other defendants. *Id.* In reaching this conclusion, I do not advocate "trial on affidavits," nor do I think I have usurped the factfinder's province by engaging in "credibility determinations," "weighing of the evidence," or "drawing ... legitimate inferences from the facts." *Id.* at 255, 106 S.Ct. at 2513. I have taken Moore at his word, but I do not think that he has alleged that the riot had ended by the time Holbrook came to take him out of his cell, nor do I believe that one can derive that factual allegation by drawing "justifiable inferences" in Moore's favor from his affidavits. *Id.* This court has stated that "bare allegations" by the non-moving party will not suffice to avoid summary judgment, *Mitchell v. Toledo Hospital,* 964 F.2d 577, 581–82 (6th

tached to the motions. Joint Appendix at 128, 138. As to the first affidavit, it does not appear that the document actually was notarized, although the one attached to Moore's cross-motion for summary judgment appears to be properly notarized. Defendants made no objection to any defect in Moore's affidavits, so as with Moore's belated objections to documents submitted by defendants, any such objection is waived.

**2.** I also recognize that some of these documents, if produced at trial, might be objectionable as hearsay outside any recognized exception. Evidence inadmissible at trial may not be considered for purposes of summary judgment. Fed. R.Civ.P. 56(e); *Daily Press, Inc. v. United Press International,* 412 F.2d 126, 133 (6th Cir.), cert. denied, 396 U.S. 990, 90 S.Ct. 480, 24 L.Ed.2d 453 (1969). In any case, as with Moore's complaint on appeal that the defendants' documents were not authenticated, any such objection has been waived at this point.

Cir.1992). Despite its being a material element to his claim, Moore has not even made the "bare allegation" that the riot had ended by the morning of the 27th.

### III.

Only "unnecessary and wanton infliction of pain" on an inmate by prison guards constitutes an Eighth Amendment violation. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). When a prison riot breaks out which "poses significant risks to the safety of inmates and prison staff," *id.* at 320, 106 S.Ct. at 1085, "the question whether the measure[s] taken inflicted unnecessary pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm,'" *id.* at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *see also Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992). Prison officials' actions in a riot situation are "accorded wide-ranging deference" in deciding how to restore and maintain order. *Id.* 475 U.S. at 321–22, 106 S.Ct. at 1085 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)). In the context of summary judgment, "unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Id.,* 475 U.S. at 322, 106 S.Ct. at 1085.[3]

Moore alleges that he had nothing to do with the riot, and that the guards grabbed and beat him for no reason. Defendants say that Moore helped instigate the riot, and that any injury he sustained occurred when, as the guards were escorting him up a flight of stairs, he fell on top of Holbrook, who also claims to have sustained injuries as a result

of the fall. First, any participation Moore may have had in the riot is irrelevant as he describes the facts of the alleged beating. As the Court noted in *Whitley*, the "safety of inmates and prison staff" are of central concern during a prison riot. Prison records show that a total of ten prisoners were moved as a direct consequence of the riot, two when the range was flooded on the night of the 26th, and eight more, including Moore, at or around the time when prisoners began setting fires in the cellblock. Joint Appendix at 59–60 (Blair Report), 62–65 (Staff visit logs). Force had to be used to remove some of the prisoners from their cells, *see, e.g.,* Report of C/O Kelly, describing removal of Inmate Allen, Joint Appendix at 52, although the parties do not dispute that Moore willingly permitted the guards to put him in handcuffs before he exited his cell. Whether or not Moore instigated or participated in the disturbance, for his own safety he, and several other inmates, had to be moved to a different area of the prison until the riot was quelled. This fact indicates that any alleged use of force required to move the prisoners occurred in good faith and for the legitimate purpose of clearing the cell block. *Whitley,* 475 U.S. at 322, 106 S.Ct. at 1085. The circumstances of the alleged beating, then, detract from any "reliable inference of wantonness in the infliction of pain."

The record also shows that Moore's injuries were not serious, consisting of an edema (swelling) on the left forehead, pain in the right shoulder and beneath both arms, pain in the groin area, and slight cuts on the wrists. Medical report, Joint Appendix at 74. As the majority correctly notes, the infliction of pain, not the infliction of injury, gives rise to a constitutional violation. However, "the absence of serious injury is ... relevant to the Eighth Amendment inquiry." *Hudson,* —— U.S. at ——, 112 S.Ct. at 999. While not dispositive of the issue, *de minimis* injuries suggest *de minimis* use of force by defendants. *Id.* at ——, 112 S.Ct. at 1000. Looking at "the need for the application of force, the relationship between the

---

**3.** While *Whitley* reviewed an appeal of the District Court's grant of a directed verdict in favor of defendant prison officials, the same standard applies in the context of summary judgment. *See*

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989), as cited in Section II of this opinion.

need and the amount of force that was used, and the extent of injury inflicted," *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085, the facts as set out by Moore, to the extent they are backed up by any evidence, do not "support a reliable inference of wantonness in the infliction of pain," *id.* at 322, 106 S.Ct. at 1085. As with the other essential element of his case, the evidence supporting Moore's allegation that defendants acted "maliciously and sadistically to cause harm," *Hudson,* —— U.S. at ——, 112 S.Ct. at 996, is too thin, in my opinion, to withstand summary judgment under the standards described above.

### IV.

Prisoners' *pro se* civil rights actions for injuries and deprivations suffered while incarcerated make up a substantial portion of already logjammed District Court dockets, and take a considerable bite out of this court's time and energy. Time and again the inferior courts have been assured that giving every benefit of the doubt to plaintiffs and permitting cases of questionable merit to proceed to trial "does not open the floodgates for filings by prison inmates." *Hudson,* —— U.S. at ——, 112 S.Ct. at 1003 (Blackmun, J., concurring). But for each case where a sadistic prison guard has maliciously battered a helpless inmate, we seem to have a dozen cases alleging bad food or complaining of restrictions on receiving subscriptions to dirty magazines. Unfortunately, the plight of truly aggrieved *pro se* plaintiffs is often aggravated by near illiteracy, making it hard to distinguish merit from frivolity.

Nonetheless, parties proceeding *pro se* are not exempted or excused from the Federal Rules governing pleading, dismissal for failure to state claims, and summary judgment. These Rules permit the District Courts to screen out cases which, if tried to a jury, would almost inevitably see one party prevail. Implicit in the Rules, and in current summary judgment standards, is the presumption that the cream generally rises to the top. Judges being human, they will sometimes err in making these assessments, which is why this court exists. But as Judge Nelson has opined in voting to dispose of a case of similar merit to Moore's, "a full-scale trial in a case as lopsided as this one would probably be a misallocation of judicial resources." *Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1068 (6th Cir.1990) (concurring opinion).

What the District Court had before it was Moore's word that he was beaten for no reason after being taken out of his cell for no reason, and extensive prison records detailing a serious and dangerous ongoing disturbance, and describing Moore's assaulting Holbrook when he and other guards attempted to move Moore and several other prisoners out of their cells. While I have noted, and cleaved to, the tradition of reviewing *pro se* cases leniently, I also observe that this is not a Clarence Gideon situation where a simply worded handwritten plea for judicial intervention has found its way to the bar of this court. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Moore's *pro se* status did not hinder him from filing timely pleadings, affidavits, and responses to both defendants' motions and the District Court's and the Magistrate Judge's orders, including two motions for summary judgment, two motions for appointment of counsel, a motion to strike defendants' motion to extend time to answer, a motion to amend his complaint, a motion to extend time to respond to defendants' motion for summary judgment, and numerous other motions and affidavits. What Moore did not submit, however, is even one eyewitness affidavit or other facially reliable evidence to corroborate his version of the facts. Even if we were to excuse Moore's shortcomings in making actionable allegations as described earlier, the bottom line is that summary judgment will be granted to defendants where plaintiff has not at least indicated that he could present enough evidence at trial to allow him to prevail. Moore has not done so, in my estimation.

I have one final concern. Defendants submitted to the District Court page after page of prison records, including documents made contemporaneously to the events in question such as staff logs and the medical records of the guards, the plaintiff, and the other prisoners involved, all of which tell an entirely different story from plaintiff's. To discount

the overwhelming evidentiary weight of these records, as I think the majority does, is to assume that at trial, Moore could prove something he has not even alleged: that the prison authorities have engaged in a comprehensive cover-up, including *post facto* alteration of prison documents and records, solely to support defendants' version of the events. I decline to join in that implicit assumption; all I see before us, as I think all Judge Weber saw before him, is a fatally "lopsided" case. Mr. Moore shall have his day in court, but I have no doubt it will not be a fruitful one.

I respectfully dissent.