39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ray LORD, Plaintiff-Appellee,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
 No. 93-2250.
 United States Court of Appeals, Sixth Circuit.
 Oct. 27, 1994.
 
 Before: BROWN, MARTIN, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Ray Lord brought this suit to terminate his pension under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1132(a)(1)(B) and (e)(1), and to exercise his right to return to work at General Motors Corporation. He now appeals the district court's grant of summary judgment in favor of General Motors. Lord claims that General Motors' determination that he continued to be totally and permanently disabled was "arbitrary and capricious," and that the district court misinterpreted relevant provisions of the applicable pension plan. For the reasons set forth below, we affirm the district court's ruling.
 
 I.
 
 2
 As a result of head injuries suffered in a car accident, Lord has received a pension under General Motors' Hourly-Rate Employee Pension Plan since 1981. That plan, as amended and incorporated into the 1987 Supplemental Agreement Covering Pension Plan, was in effect from October 1, 1987, until October 1, 1990. Section 3(a) of the Supplemental Agreement Covering Pension Plan establishes a Board of Administration, composed of three members appointed by United Automobile Workers and three appointed by General Motors. That Section also authorizes the Board of Administration to resolve disputes arising under the pension plan and establishes a four-member quorum requirement.
 
 
 3
 Section 3(c) provides that Board of Administration members "shall work out matters," such as "how disputes over total and permanent disability will be handled." In accordance with this provision, the Board of Administration enacted specific procedures for determining whether an employee is totally and permanently disabled. However, the Board of Administration failed to enumerate procedures for settling disputes arising from a pensioner's claim that he is no longer totally and permanently disabled. Instead, United Automobile Workers and General Motors resolved those disputes in accordance with informal, but agreed-upon, procedures. Typically in those rare instances, two representatives of the Board of Administration agreed to have the pensioner re-examined by the same clinic or doctor who last examined him, in order to determine whether his condition had changed so as to warrant ceasing his disability pension. Moreover, General Motors and United Automobile Workers, pursuant to their collective bargaining agreement, agreed that the determination of the clinic or doctor would be final and binding. Thus, if the clinic or doctor determined that the pensioner remained totally and permanently disabled, the disability pension continued.
 
 
 4
 In November 1985, General Motors first reviewed Lord's entitlement to total and permanent disability benefits, concluding that Lord was no longer totally and permanently disabled and could return to work, with certain restrictions. Unsatisfied with this determination, the local union then requested an impartial clinic examination on Lord's behalf. Accordingly, Dr. Ben Farah examined Lord in 1986. After referring Lord to a specialist, Dr. Cole, Dr. Farah ultimately concluded that Lord was wholly and permanently disabled. As a result of this medical determination, Lord continued to receive his disability pension.
 
 
 5
 In June 1989, however, Lord presented General Motors' medical department with a recommendation from his physician, Dr. Pavonne, stating that Lord could return to work, with certain restrictions. Dr. Gerrick, the plant medical doctor, examined Lord, reviewed other available medical reports, and discussed Lord's medical condition with Dr. Pavonne. Given Lord's medical restrictions, no appropriate job could be identified.
 
 
 6
 At United Automobile Workers' request, Dr. Farah re-examined Lord on August 2, 1990. Echoing his 1986 recommendation, Dr. Farah again determined that Lord was totally and permanently disabled. Dr. Cole, the specialist who examined Lord in 1986, also re-examined Lord, on August 14 and December 11, 1990. Although his August report indicated that Lord was not suffering from any condition that should preclude working, his December report observed that Lord suffered from disequilibrium and imposed significant employment restrictions on Lord.
 
 II.
 
 7
 We review a district court's grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). Under Fed.R.Civ.P. 56(c), summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The Court views all evidence before it in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).
 
 
 8
 Section 502(a)(1)(B) of ERISA, 29 U.S.C. Sec. 1132(a)(1)(B), provides the exclusive remedy for a person seeking to clarify his rights and benefits under an ERISA-covered employee benefit plan. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53-54 (1987); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). The "arbitrary and capricious" standard of review applies when a plan affords the administrator discretionary authority to construe the terms of the plan or to determine eligibility. Davis v. Kentucky Fin. Cos. Retirement Plan, 887 F.2d 689 (6th Cir.1989), cert. denied, 495 U.S. 905 (1990). Here, Section 3(a) of the Supplemental Agreement Covering Pension Plan empowered the Board of Administration to make final decisions regarding matters within its authority. In addition, Section 3(c) authorized the Board of Administration to formulate procedures for resolving disputes. The procedures enacted generally provided that independent doctors were to make final and binding determinations concerning benefit eligibility. Therefore, in view of this discretionary authority vested in the administrator, the "arbitrary and capricious" standard applies.
 
 
 9
 Recognizing the "efficient pension administration" rationale behind this standard of review, this Court has explained that decisions denying eligibility for benefits are not arbitrary and capricious provided they are "rational in light of the plan's provisions." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.), cert. denied, 488 U.S. 826 (1988). In the instant case, General Motors' determination that Lord remained totally and permanently disabled was neither arbitrary nor capricious. The ultimate findings of Dr. Farah, Dr. Cole, and Lord's own physician, Dr. Pavonne, supported the same conclusion: that Lord remained totally and permanently disabled. Moreover, the language of Section 3(c) of the Supplemental Agreement Covering Pension Plan contemplated the kind of informal disability determination made in this case. That Section merely authorized the Board of Administration to "work out matters," such as "how disputes over total and permanent disability claims will be handled." Given this broad language, Lord's argument that all dispute resolution procedures must be adopted by the Board of Administration at a Board Meeting, with the required quorum present, is without merit.
 
 
 10
 The decision of the district court is AFFIRMED.