42 F.3d 1388
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carr JOHNSON, Plaintiff-Appellee,
v.
Reginald A. WILKINSON, et al., Defendants-Appellants.
 No. 94-3016.
 United States Court of Appeals, Sixth Circuit.
 Nov. 30, 1994.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and COHN, District Judge*.
 PER CURIAM.
 
 
 1
 Carr Johnson appeals the district court's decision granting partial summary judgment in favor of Appellees concerning his First Amendment claims brought under 42 U.S.C. Sec. 1983. Johnson challenges the district court's analysis of the constitutionality of the prison regulation under which he was punished. We affirm the district court's decision.
 
 
 2
 While Johnson was incarcerated at the Lima Correctional Institution in Ohio, he wrote Book of the Living Dead, a book describing his views on the African-American experience. Johnson assigned his rights to the book to a publishing company owned and operated by his wife. On August 13, 1991, in connection with his efforts to publish the book, Johnson was charged by the prison with the offense of operating a business without permission in violation of Ohio Administrative Code 5120-9-06(20). The Rules Infraction Board held a hearing on September 4, 1991, and found that Johnson had violated Rule 20, a prison regulation that prohibits inmates from operating a business, "whether or not for profit, including usury, without specific permission in writing from the managing officer." Ohio Adm.Code 5120-9-06(20). This is considered a Class II offense, "whose violation constitutes an immediate and direct threat to the security of the institution, its staff, visitors, inmates, or the inmate who has violated the rule." Ohio Adm.Code 5120-9-06(B).
 
 
 3
 In finding Johnson guilty of this offense, the Rules Infraction Board relied on papers confiscated from his locker on August 13, 1991. These papers contained a list of 145 Black elected officials in Tennessee; lists of over sixty different organizations and monthly book and magazine publications with instructions on where to send a copy of a book for review; a pre-printed letter announcing the book and asking that it be ordered; a hand-written profit and loss projection; a letter from Book Masters, Inc. to Johnson quoting prices to print a book; a letter from Johnson to Publishers Group West requesting a copy of a contract and book information sheet; an envelope containing copyright information; twenty-seven letters to other authors thanking them for permission to quote from their work; and, three pre-printed pamphlets which were being passed out to general population inmates describing how to order the book.
 
 
 4
 The Rules Infraction Board sentenced Johnson to fifteen days' disciplinary control within the institution. Johnson appealed this punishment to both the Warden and the Director of the Ohio Department of Rehabilitation and Corrections; both affirmed the Rules Infraction Board's decision. Meanwhile, Johnson's book was published October 7, 1991.
 
 
 5
 Johnson initially filed suit pro se, naming fourteen defendants and seven causes of action. Counsel was then appointed to Johnson, who, through counsel, filed an amended complaint on December 15, 1992. Named as defendants were Reginald Wilkinson, the Director of the Ohio Department of Rehabilitation and Corrections, and various officials at the Lima Correctional Institution. The original seven causes of action were reduced to two: violations of the First and Eighth Amendments.
 
 
 6
 Johnson's case was assigned to the expedited track and submitted to a magistrate, who issued his report and recommendation on February 10, 1993. The magistrate opined that Johnson had not stated a cognizable Eighth Amendment claim, but had presented a First Amendment claim. Johnson objected to this report and recommendation. On April 29, the district court found that Johnson had established an Eighth Amendment claim. Johnson moved for summary judgment, to which the Appellees responded and filed a Supplemental Cross-Motion for Summary Judgment. Johnson moved to strike this supplemental motion because it was thirty pages long, exceeding the page limit for memoranda in expedited cases by twenty pages.
 
 
 7
 On November 24, the district court entered its order granting partial summary judgment. The court reasoned that Johnson was found guilty of conducting a business, not writing a book. It then determined that Appellees were entitled to summary judgment as to Johnson's First Amendment claim, but not the Eighth Amendment claim. In doing so, the court denied Johnson's motion to strike the Appellees' supplemental motion. On November 30, the parties agreed to withdraw the Eighth Amendment claim without prejudice pending this Court's decision on the First Amendment claim.
 
 
 8
 This Court reviews a grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We view all evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 9
 On appeal to this Court, Johnson makes two arguments: first, that the district court applied the wrong legal standard, and second, that the district court erred by denying his motion to strike the Appellees' supplemental motion. Johnson argues essentially that he was punished for writing his book, rather than for conducting a business. He maintains that he was in the process of expressing his ideas, and emphasizes that he was disseminating those ideas to free citizens.
 
 
 10
 * First, Johnson argues that the correct legal standard by which to evaluate First Amendment claims in a prisoner's civil rights context is found in Procunier v. Martinez, 416 U.S. 396 (1974), rather than Turner v. Safley, 482 U.S. 78 (1987). Although Johnson notes that Martinez dealt with prisoners' outgoing correspondence, he claims his book is such correspondence, "although of a more sophisticated nature." He challenges Rule 20 as being both overbroad and vague, as it does not define the term "business." Johnson claims the district court gave undue weight to profit as a motive in making its decision. He repeatedly stresses that he was expressing his thoughts, not conducting a business, and that to punish him for that amounts to censorship. He further claims that Rule 20 is so broadly based as to "smack of prior restraint."
 
 
 11
 Procunier v. Martinez, 416 U.S. 396 (1974), involved a constitutional challenge to a prison regulation regarding censorship of prisoner mail. The court, after noting its reluctance to delve into problems of prison administration, addressed the issue of "the appropriate standard of review for prison regulations restricting freedom of speech." Id. at 406. However, the court did not consider the extent to which a person's right to free speech survives incarceration. The court was instead concerned with the fact that censorship of prisoners' outgoing mail affected the First Amendment rights of those receiving the correspondence.
 
 
 12
 The Martinez court noted several governmental interests that are at stake in this context: "the preservation of internal order and discipline, the maintenance of institutional security ..., and the rehabilitation of the prisoners." Id. at 412. It then held
 
 
 13
 that censorship of prisoner mail is justified if the following criteria are met. First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials ... must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, or rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved.
 
 
 14
 Id. at 413. The court then found the regulation involved there was invalid.
 
 
 15
 Turner v. Safley, 482 U.S. 78 (1987), presents a different situation, that of correspondence between inmates. The challenged regulation thus did not involve the rights of non-prisoners. The court itself distinguished its decision from that in Martinez, where its holding "turned on the fact that the challenged regulation caused a 'consequential restriction on the First and Fourteenth Amendment rights of those who are not prisoners.' " Id. at 85 (quoting Martinez, 416 U.S. at 409). In this situation, the court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. The court then listed four factors to consider in determining the reasonableness of a regulation: (1) whether there is a rational connection between the regulation and the government interest; (2) whether there are alternative means available to the prisoner of exercising the affected right; (3) the impact accommodation of the constitutional right will have on guards and other inmates; and (4) that the absence of ready alternatives is evidence of a regulation's reasonableness. Id. at 89-91.
 
 
 16
 The district court applied the Turner standard in reviewing the constitutionality of Rule 20 as it was applied to Johnson. This was the appropriate standard to use. Prisoners have no constitutional right to conduct business activities. French v. Butterworth, 614 F.2d 23, 24 (1st Cir.1980). Johnson was found guilty by the Rules Infraction Board of conducting a business in prison without permission. The district court found that "Rule 20 does not prohibit the mere writing of a book. However, when someone writes a book and takes other actions to turn that book into profit, whether for themselves or for others, then their actions could be considered as conducting a business." Here, the evidence supports this conclusion. Specifically, the profit and loss statement, the price quotes, the pamphlets advertising the book, and the many letters announcing the book and asking that it be bought or reviewed, indicate that Johnson did more than "monitor" the book's publication.
 
 
 17
 Martinez does not apply to the facts of this case. Johnson does not claim any censorship of his confiscated letters, but only of the expression of ideas in his book. He stretches his argument when he equates his book with correspondence in order to implicate the First Amendment rights of its recipients. However, this is insufficient to remove these facts from the ambit of Turner. Rule 20 prohibits certain conduct by prisoners--operating a business without permission--and even Martinez, 416 U.S. at 414, n. 14, implicitly sanctioned such regulations. Further, this regulation implicates only prisoners' rights. Contrary to Johnson's assertion, there are obviously alternative means available for him to exercise his right to freedom of speech because his book actually was published. Moreover, in this case, Johnson has not shown that he made any effort to comply with the regulation by seeking permission before attempting to publish his book.
 
 
 18
 We agree with the Appellees here, who characterize Johnson's conduct as "marketing a book." We find that Johnson was engaged in specific financial and marketing activity concerning his book. This is proscribed conduct under Rule 20, which, as Appellees note, bears a reasonable relationship to several legitimate penological objectives: preserving scarce prison resources to maintain security, especially with the monitoring of mail; maintaining equality among the prisoners and avoiding the "big wheel" syndrome; and limiting the potential for perpetrating business fraud from behind bars. We further conclude that Rule 20 is neither overbroad nor vague, proscribing nothing more nor less than running a business in prison without permission. Johnson has no constitutional right to conduct business within a prison. This is what he was charged with, the evidence showed he was doing, and he was punished for. Because no violation of any Constitutional right occurred here, we find it unnecessary to address the Appellees' claims of qualified immunity.
 
 II
 
 19
 Johnson's second argument is that the district court abused its discretion by refusing to strike the Appellees' supplemental motion. Local rules for the Northern District of Ohio provide that memoranda shall not exceed ten pages in expedited cases. They also specify what must be contained in memoranda over fifteen pages long, e.g., table of contents, statement of the issue, etc. Johnson maintains that because Appellees failed to comply with the page limit and structure requirement of the local rules, it was an abuse of discretion not to strike their motion. He argues that case law supports this conclusion. Unfortunately for Johnson, the cases he refers to, one of which is only a district court decision, are unpublished opinions, Kunselman v. Board of Educ. of Western Reserve Local School Dist., 1993 WL 206539 (6th Cir. June 10, 1993); Driving School Ass'n of Ohio v. Shipley, 1992 WL 132020 (N.D.Ohio June 12, 1992). Thus, even were they analogous to the instant situation, this Court is not obligated to follow them. Moreover, we find that these cases are distinguishable from Johnson's. We conclude that the district court acted within its discretion when it denied Johnson's motion to strike.
 
 
 20
 Because we find that Rule 20 is a reasonable prison regulation which furthers legitimate penological interests, that it is designed to prohibit conduct, not expression, and that Johnson made no attempt to comply with this regulation by seeking permission, we AFFIRM the district court's decision granting summary judgment as to Johnson's First Amendment claims.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation