**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0255n.06
File: April 12, 2006

**No. 05-1009**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ADRIAN CARLTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| P. TURNER, Corrections Officer, et al., | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees, | ) | |
| | ) | |
| M. JOHNSON, Corrections Officer, | ) | |
| | ) | |
| Defendant. | ) | |

Before: KENNEDY, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Proceeding pro se, Adrian Carlton challenges the district court's rejection of his § 1983 claims against several employees of the Michigan Department of Corrections. Because Carlton has shown that material factual disputes preclude the entry of summary judgment against him with respect to his Eighth Amendment claim for improper use of force and with respect to most of his related claims, we reverse in part and affirm in part.

No. 05-1009
*Carlton v. Johnson*

I.

An inmate at the Baraga Maximum Correctional Facility in Michigan, Carlton witnessed two corrections officers assault another prisoner on May 17, 2003. Twelve days later, two corrections officers, P. Turner and R. Ekdahl, removed Carlton from his cell and took him to the office of the Resident Unit Manager, W. Jondreau. Carlton Aff. at 2 (July 6, 2004) (D. Ct. Docket No. 74). After the officers seated him in a chair and handcuffed his arms behind his back, they asked him what had happened on May 17. Compl. at 3 (Jan. 7, 2004) (D. Ct. Docket No. 1); Carlton Br. in Opp. to Mot. for Dismissal and Summ. J. at 1–2, 14 (June 29, 2004) (D. Ct. Docket No. 68). When Carlton began to relate his account of the assault, Turner "struck [him] violently [on] the back of the head." Carlton Br. in Opp. at 7. And when he tried to give his account of the incident a second time, Turner again struck him, "this time with greater force," causing Carlton "to almost fall into the desk of [ ] Jondreau." *Id*. The second time, Carlton claims, "Turner had keys in his hands," and when Turner struck him, "some part of the keys injured [Carlton's] head" by "cut[ing] and/or bust[ing] a small hole" in his head, causing him to bleed. *Id*. at 16. The other officers in the room, Ekdahl and Jondreau, "both . . . failed to stop" Turner from assaulting him, Carlton alleges. Carlton Aff. at 2. Carlton was so "frighten[ed]" by these attacks that "after being instructed by [ ] Jondreau to write a statement favorable to the officers, [Carlton] offer[ed] to give the statement in the form of a sworn affidavit and thereafter he was instructed to back date the statement to the date of the incident." Carlton Br. in Opp. at 2.

After the incident, Carlton "asked for medical attention" for his injury "and got nothing." *Id*. at 16. He concedes, however, that he "did not sustain a serious injury," acknowledging that the injury was "minor." *Id*.

Carlton later made an additional statement on behalf of the officers, one that (he alleges) Hearing Investigator Stephen Raymond released to the prisoner involved in the May 17 incident, an inmate named Jones. Compl. at 4. When Jones' sister received a copy of the statement, she offered to pay Carlton to withdraw it and threatened to harm him if he did not. *Id*.

In the aftermath of these incidents, Carlton filed a pro se § 1983 action in federal court against Turner, Ekdal, Jondreau and Raymond, alleging that they had violated his First, Eighth and Fourteenth Amendment rights. The defendants conceded that Carlton had exhausted his administrative remedies. *See* Def. Br. in Supp. of Mot. for Dismissal and Summ. J. at 3–4 (June 22, 2004) (D. Ct. Docket No. 60) ("Department records show that he filed three grievances on these issues and took each one to the third step."). But they denied that any of these events took place and accordingly moved to dismiss the complaint or in the alternative for summary judgment.

The magistrate judge recommended that the district court grant defendants' summary-judgment motion. Over Carlton's objections, the district court adopted the magistrate judge's report and recommendation. Carlton appealed. Expressing a belief that "the issues in this pro se appeal are without merit," the State of Michigan chose not to submit an appellate brief to this court on behalf of the defendants. Letter from Linda M. Olivieri (Jan. 21, 2005).

II.

Our standard of review in this setting is familiar. We give fresh review to the district court's grant of summary judgment, *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); we "construe all reasonable inferences in favor of the nonmoving party," *id.*; and we will affirm the grant of summary judgment if "no genuine issue of material fact" exists "and the moving party is entitled to judgment as a matter of law," *id.*

It is a "settled rule" that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks and ellipses omitted). "What is necessary to establish an unnecessary and wanton infliction of pain," however, "varies according to the nature of the alleged constitutional violation," *id.* (internal quotation marks omitted), "for two reasons," *id.* at 8. "First, the general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Id.* (internal quotation marks, ellipses and brackets omitted). "Second, the Eighth Amendment's prohibition of cruel and unusual punishments draws its meaning from the evolving standards of decency that mark the progress of a maturing society, and so admits of few absolute limitations." *Id.* (internal quotation marks, ellipses and brackets omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6–7. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," "whether or not significant injury is evident." *Id*. at 9; *see also id*. ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.").

Viewing the facts in the light most favorable to Carlton, they present a picture of unacceptable conduct. The officers assaulted him twice for relating what he had seen during an altercation between prison guards and another inmate, apparently in an effort to induce him to change his story to coincide with the guards' version of events. Seated and handcuffed, in a room with no other inmates and with three prison officials present, Carlton could not have posed a threat to the officers' (or anyone else's) safety. While not "every malevolent touch by a prison guard gives rise to a federal cause of action," *id*., and while "*de minimis* uses of physical force" do not support a cognizable Eighth Amendment claim, *id*. at 10, that is not all that happened here. According to Carlton's allegations, the plural assaults drew blood, and even if the resulting injury was "minor" (as Carlton acknowledges), that fact does not preclude him from stating a cognizable Eighth Amendment claim in all settings. *See Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2

(6th Cir. May 22, 2000) ("While a *de minimis* use of force will not support an actionable claim, a plaintiff may recover even if he suffers only minor injury.") (citation omitted); *Moore v. Holbrook*, 2 F.3d 697, 700–01 (6th Cir. 1993) (concluding that if an inmate's claims that "he was savagely beaten on three occasions by the defendants for no reason" are true, "[u]nder the *Hudson* and *Whitley* [*v. Albers*, 475 U.S. 312 (1986)] doctrines, [his] evidence would appear to show that defendants acted in bad faith" even if his injuries—"he complained of soreness to his wrists, underarms, shoulders, and groin, and that he had an 'edema' on his forehead, and that he did not dislocate or fracture his right shoulder"—were only "*de minimis* for purposes of Eighth Amendment analysis") (internal quotation marks omitted); *Kryling v. Sealscott*, No. 98-3470, 1999 U.S. App. LEXIS 20322, at *4 (6th Cir. Aug. 17, 1999) ("A *de minimis* use of force will not support an actionable claim, but a plaintiff may recover even if he suffers only minor injury.") (citations omitted).

What makes this injury and claim cognizable under the Eighth Amendment is that the officers provided no legitimate explanation for using force. While we will excuse exercises of force "applied in a good-faith effort to maintain or restore discipline," *Hudson*, 503 U.S. at 7, the officers did not provide any justification for their conduct, *see Moore*, 2 F.3d at 700 ("To determine whether a claim of assault rises to a level of constitutional magnitude, a court must consider the reasons or motivation for the conduct, the type of force used, and the extent of the inflicted injury."); *id.* (holding that if officials assaulted an inmate "for no reason," the evidence "would appear to show that defendants acted in bad faith" in violation of *Hudson*); *Al-Bari v. Guider*, No. 96-6707, 1998 U.S. App. LEXIS 2947, at *7–8 (6th Cir. Feb. 19, 1998) (holding that inmate's "version of the facts

supports a claim that defendant violated his Eighth Amendment rights" because "defendant used force to inflict pain on plaintiff, not to maintain or restore order"); *Thaddeus-X*, 2000 WL 712354, at *2 ("Abrasions, pain, and swelling . . . may be sufficient injury to support an Eighth Amendment claim where, as here, there are genuine fact issues concerning the cause of plaintiff's injury and the justification for, and the reasonableness of, any force applied by defendant."); *Kryling*, 1999 U.S. App. LEXIS 20322, at *4 (holding that because the inmate "wore restraints and posed no physical threat to" the guard when he assaulted the inmate, the inmate had stated a cognizable Eighth Amendment claim).

The critical question in this case is what happened: In other words, are Carlton's allegations true or false? If what Carlton says is true, he has stated a cognizable Eighth Amendment claim. If not, the claim evaporates. Given that the claim rises or falls based on a credibility assessment of what happened during this confrontation and given the few facts and arguments before us, the case should go to a factfinder to determine who is telling the truth.

Four other points deserve attention. First, in the aftermath of *Hudson*, a 1992 decision by the Supreme Court and the principal decision upon which we rely today, the defendants cannot claim that they are entitled to qualified immunity because if Carlton's allegations are true, the officers violated clearly established constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Second, to the extent Carlton's pro se brief means to raise discovery-related objections to the disposition of his claim below, we note that he may seek discovery upon remand.

Third, in addition to the excessive-force Eighth Amendment claim arising from the alleged assaults, Carlton asserts several other related constitutional claims stemming from the May 29 incident. He claims that Jondreau and Ekdahl exhibited deliberate indifference to his constitutional rights when they did not stop Turner from assaulting him, Compl. at 2; that Jondreau, Turner and Ekdahl retaliated against him when they assaulted him for exercising his First Amendment rights (when he tried to tell the truth about the May 17 incident), Carlton Br. in Opp. at 19–20; and that Jondreau, Turner and Ekdahl conspired to cover up both the May 17 incident (by forcing him to make a false statement on their behalf) and the cover-up itself (by lying and asserting that what Carlton alleges happened on May 29 never did happen), Compl. at 3, 6. Because it appears from the thin record we have before us that these other claims rise or fall based on the same factual dispute that underlies the Eighth Amendment assault claim, they too deserve to be considered by the factfinder or at least deserve further consideration by the district court.

Finally, Carlton independently claims that Raymond retaliated against him, exhibited deliberate indifference and subjected him to threats and risk of harm from other inmates by releasing his confidential statement to prisoner Jones, which caused Carlton to be labeled a "snitch" among his fellow inmates. *Id.* at 4, 7. In contrast to the above claims, Carlton has not provided any non-hearsay evidence to support this claim, has not contradicted Raymond's affidavit that Raymond did

not release the confidential information, and has not sought evidence to support this claim. Under

these circumstances, the district court properly dismissed Carlton's claim against Raymond.

III.

For these reasons, we reverse in part and affirm in part, and we remand the case for further

proceedings consistent with this opinion.