**McDONALD'S CORP., a Delaware Corp., Plaintiff,**

**v.**

**CITY OF NORTON SHORES, a Michigan municipal corporation; and City of Norton Shores Planning Commission, Defendants.**

No. 1:99CV814.

United States District Court, W.D. Michigan, Southern Division.

June 26, 2000.

Ellen S. Carmody, Law, Weathers & Richardson, Grand Rapids, MI, for McDonald's Corporation, plaintiff.

Joel E. Krissoff, Farr & Oosterhouse, Grand Rapids, MI, Steven Floyd Stapleton, Plunkett & Cooney, PC, Grand Rapids, MI, for City of Norton Shores, Norton Shores Planning Committee, defendants.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on the parties' several cross-motions for summary judgment concerning all claims pending in this matter. These motions have now been fully briefed and there is no need for oral argument on the motions. For the reasons which follow, the Court will dismiss all federal law claims and remand state law claims to state court.

### PROCEDURAL BACKGROUND

Plaintiff McDonald's Corporation filed suit in May 1999 against Defendants City of Norton Shores and City of Norton Shores Planning Commission in the Circuit Court for the County of Muskegon, Michigan. On or about September 28, 1999, the Complaint was served upon Defendants. Defendants then removed the action to this Court on November 18, 1999 as containing federal law claims.

In addition to state law claims, Plaintiff's Complaint originally stated three federal law claims against Defendants: Count II for violation of substantive due process; Count III for violation of equal protection; and Count IV for the taking of property without just compensation. After removal, the Complaint was re-alleged in substantially the same form in Plaintiff's First Amended Complaint, which was allowed pursuant to a Stipulation and Order approved December 3, 1999 (Dkt. No. 12).

### FACTS

Interpreting the record in a light most favorable to the Plaintiff, the factual record is as follows: Plaintiff is the lessee of real property located in Norton Shores, Michigan (as more particularly described in the map exhibits filed by the parties). (*See* lease—Dkt. 59, Exhibit 5.) The real property in question is an asphalt parking lot approximately one acre in size. It is located within the K–Mart Shopping Plaza at the corners of Henry Street and Seminole Road. The property is bordered by Henry Street, a bank, a Rite Aid store, and a K–Mart Store. Seminole Road is south of the Rite Aid store. South of Seminole Road is a residential area. (*See* aerial photographs—Dkt. No. 14, Exhibit 6.)

This property is zoned "C–2 General Retail District." The C–2 zoning permits "principal uses" such as "restaurants including fast food." (City of Norton Shores Zoning Ordinance, Section 5.113.) To obtain a building permit in a C–2 district, an applicant must obtain site plan approval from the Norton Shores Zoning Commission as stated in Section 11.101 of the Zoning Ordinance. (*Id.*) The Ordinance states a number of factors which the Commission may consider in determining whether to approve a site plan. (*Id.* at Section 11.102.) These standards do not explicitly include traffic flow or aesthetics. (*Id.*)

On or about September 22, 1998, Plaintiff submitted a site plan to the City of Norton Shores' city planner, Robert W. Bilkie, for approval of the construction of a McDonald's restaurant with drive-through window on the subject property. (Dkt. No. 14, Exhibit 2.) Just prior to the submission, the City of Norton Shores had approved a site plan for a sit-down restaurant to be operated adjoining the McDonald's site at the K–Mart store. (Dkt. No. 14, Exhibit 5.) Between September 1998 and February 1999, Bilkie and Plaintiff exchanged correspondence on issues pertaining to the site. (Dkt. No. 14, Exhibit 2.) On February 19, 1999, Plaintiff submitted a revised site plan for review. (*Id.*) The site plan was considered at a meeting of the Planning Commission on March 9, 1999 and denied because of: "1. The increase in traffic on Henry Street. 2. Transition to the residential area beginning at Henry Street and Seminole Road. 3. This use is not aesthetically desirable." (Dkt. No. 14, Exhibits 3 and 8.) The precise concerns of the Planning Commission at that meeting are expressed in a transcript of the meeting and include concerns over vehicle and pedestrian traffic, the

proximity of the traffic to residential areas, and the compounding of traffic problems due to visits from students at Mona Shores High School. (Dkt. No. 31, Exhibit 3.)[1] The Commission's long-term plan for development of Henry Street calls upon it to limit traffic congestion. (Dkt. No. 56, Exhibit 3.)

Prior to the above finding, the only traffic study completed as to the proposed development was completed by independent experts for McDonald's Corporation. These experts concluded that the restaurant would cause an additional 188 car trips during the noon hour (94 inbound and 94 outbound); 66 new trips during the mid-afternoon hours (33 inbound and 33 outbound); and 89 trips during the peak p.m. hours (46 inbound and 43 outbound). (Dkt. No. 14, Exhibit 4.) The study concluded that the surrounding roads could accommodate the projected traffic with only minor increases in delay and adjustments to the signal timing at the Henry Street and Seminole Road traffic light. (*Id.*) The study did not comment on pedestrian traffic, off-hours traffic, or litter associated with the use. The aesthetics of the McDonald's site plan are explained in the Plaintiff's site plan drawings. (Dkt. No. 14, Exhibit 9.)

According to city records, this denial of site plan was only one of three denials by the Planning Commission in the last five years. The other denials were issued to Hradsky Brothers regarding a proposed construction yard and to a proposed site for a senior housing project. (Dkt. No. 38, Exhibit A; Dkt. No. 32, Exhibit 2.) According to information provided by the Commission, there are some nine other fast-food restaurants in Norton Shores with drive-through windows, including a few others located on Henry Street. (*Id.*) Also, according to published information, the Planning Commission later approved a site plan for a Chili's (sit-down) restaurant across from the proposed McDonald's site. (Dkt. No. 32, Exhibit 6.)[2]

## STANDARD FOR SUMMARY JUDGMENT

These parties' motions for summary judgment are brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.[3]

1. Commission members Janet Day and Donald Trygstad, as well as Richard Maher, Norton Shores Community Development Director, have also explained the opposition to the site plan in their depositions. (Dkt. No. 43, Exhibits 1–3.) Other exhibits relevant to these facts are included in Plaintiff's Cross-Motion for Partial Summary Judgment regarding its Constitutional Claims, Defendants' Responses, and Plaintiff's Reply. (Dkt. No. 48, Exhibits 1–15; Dkt. Nos. 56, 59 and 60, Exhibits 1–7; and Dkt. No. 62, Exhibits 1–8.)

2. Plaintiff has failed to reference proper evidence under Rule 56(c) establishing this fact. Nevertheless, the Court will assume this fact as true for the purpose of this analysis.

3. The Court notes that Plaintiff responded in part to Defendants' Motion for Summary Judgment by filing a Rule 56(f) affidavit stat-

■ Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548 (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995) (quoting Federal Rule of Civil Procedure 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed.R.Civ.P. 56(e). The Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *id.*, un-

sworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–969 (6th Cir.1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir.1997), hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996); *Wiley v. United States*, 20 F.3d 222, 225–226 (6th Cir.1994), or legal conclusions asserted in affidavits, *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984); *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991).

### ANALYSIS

Plaintiff has alleged three federal law claims: violation of the Just Compensation Clause; violation of substantive due process; and violation of the Equal Protection Clause.

#### 1. Taking Claim

■ Plaintiff's First Amended Complaint (in Count IV) asserts a taking claim under the Fifth Amendment's Just Compensation Clause.[4] The Just Compensation Clause applies to the States because of its incorporation under the Fourteenth Amendment. *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 623, n. 1, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981).

As to this claim, the United States Supreme Court held in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), that the federal courts should only adjudicate ripe taking claims. In its words,

> A ... taking claim is not yet ripe [because] respondent did not seek compen-

ing that it was awaiting further discovery on the issues discussed. The Court has delayed decision on the Motion to the end of the discovery period so as to allow Plaintiff to supplement its filings in light of the further discovery. In the opinion of this Court, the Plaintiff has now had more than an ample opportunity for discovery and further delay in resolving these motions would be inappropriate.

4. Plaintiff does not dispute that a Fifth Amendment taking claim is not ripe. (Plaintiff's Reply, Dkt. 62, at n. 9.) While Plaintiff denies asserting such a claim in the first place, the First Amended Complaint (like the original Complaint) contains reference to a Fifth Amendment taking claim—which necessitates the Court's discussion.

sation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.... Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist at the time of the taking.... If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking.... Thus, we have held that taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act, § 28 U.S.C. 1491.... Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

\* \* \* \* \* \*

In sum, respondent's claim is premature, whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*Williamson,* 473 U.S. at 189–200, 105 S.Ct. 3108 (citations and footnotes deleted).

In this case, the federal taking claim arose from action by a Michigan municipal planning commission. There is no dispute that Michigan provides an adequate remedy for such a taking—in the form of an action for inverse condemnation—and that Plaintiff has not yet exhausted such state law remedy. As such, the federal taking claim will be dismissed without prejudice because it is not ripe for adjudication.[5]

### 2. Substantive Due Process Claim

 Count II of the First Amended Complaint alleges a violation of substantive due process. A zoning claim premised on a denial of substantive due process requires a showing of irrational governmental action or action unrelated to a legitimate governmental purpose. As the Sixth Circuit Court of Appeals explained in *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1215 (6th Cir.1992), this standard is not easily met:

> Where a substantive due process attack is made on state administrative action, the scope of review by the federal courts is extremely narrow. To prevail, a plaintiff must show that the state administrative agency has been guilty of "arbitrary and capricious action" in the strict sense, meaning "that there is no rational basis for the ... [administrative] decision."

> The use of the term "arbitrary and capricious" in this context causes considerable confusion, because these same terms are also used to describe the scope of review by state courts of state administrative action. Therefore, it must be emphasized that the state court scope of review of a decision of a state administrative agency is far broader than the federal scope of review under substantive due process.

Appeals to circumstances like the present case. *G.M. Engineers & Assoc. v. West Bloomfield Township,* 922 F.2d 328, 331–32 (6th Cir.1990). The Court understands that the First Amended Complaint does not allege a procedural due process claim. To the extent, though, that the Plaintiff might have intended such a claim, it is precluded by this case law.

5. The *Williamson* Court also analogized its decision to that in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)—which denied relief concerning a procedural due process claim as to a random and unauthorized act of state actors where the complaint failed to allege that state remedies were unavailable or inadequate. This ruling has been applied by the Sixth Circuit Court of

In some states, a state court may set aside state administrative action as being "arbitrary and capricious" on the ground, among others, that it is not supported by substantial evidence. No such ground may be used by the federal court in reviewing state administrative action in connection with a federal substantive due process attack, however. In the federal court the standard is a much narrower one. The administrative action will withstand substantive due process attack unless it " 'is not supportable on any rational basis' " or is " 'willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.' "

The federal court may make only the most limited review of the evidence before the state administrative agency. This review is limited to determining whether the agency has paid attention to the evidence adduced and acted rationally upon it. The state decision may not be set aside as arbitrary and capricious if there is "some factual basis" for the administrative action. Plaintiff here would have a jury rehear the evidence. However, we hold that the application of this deferential standard of review is a matter of law for the court. Otherwise, federal juries would sit as local boards of zoning appeals.

In other words, the appropriate scope of substantive due process review for state and local land use actions is the same as that accorded by the Supreme Court for state academic actions. That is, the federal courts should "show great respect" for the local authority's "professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted ... norms as to demonstrate that the [decisionmaker] ... did not actually exercise professional judgment."

When this court stated recently in *G.M. Eng'rs* [ *& Assoc. v. West Bloomfield*

*Township*, 922 F.2d 328, 332 (6th Cir. 1990) ] that local zoning actions would fall to substantive due process attack only if they shocked the conscience, it referred to the deferential review of local administrative zoning actions delineated above.

Although the "shocks the conscience" terminology, as another panel later observed, is more apt for cases involving physical force, it is useful in the zoning context too, to emphasize the degree of arbitrariness required to set aside a zoning decision by a local authority—and to underscore the overriding precept that "arbitrary and capricious" in the federal substantive due process context means something far different than in state administrative law.

*Pearson*, 961 F.2d at 1221–22 (citations and footnotes omitted). The decision in *Pearson* also found that the regulation of traffic congestion is a legitimate governmental objective. *Id.* at 1224; *see also Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Village of Euclid v. Ambler Realty*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Based on the above legal standards, the *Pearson* court determined that a denial of a zoning application for a McDonald's drive-through restaurant based on citizen concerns for additional traffic was not a denial of substantive due process as a matter of law. Similarly, the zoning decision at issue here does not "shock the conscience" of this Court as an irrational decision or one directed toward illegitimate objectives. The decision was made because of a rational concern for additional traffic near a residential neighborhood. The Commission was not irrational to be concerned about additional traffic near a residential neighborhood—even if McDonald's traffic engineers believed that the additional traffic could be accommodated.[6] Accordingly, the Defendants are entitled to summary judgment as a matter of law.

---

**6.** While the Court determines that the decision was not irrational or unconstitutional, the Court takes no position regarding Plaintiff's state law claims.

### 3. *Equal Protection Clause Claim*

 Count III alleges violation of the Equal Protection Clause of the Fourteenth Amendment. In the context of zoning decisions, when a suspect classification is not at issue, the Equal Protection Clause claim tends to merge with the substantive due process analysis. *Berger v. City of Mayfield Heights*, 154 F.3d 621, 624 (6th Cir. 1998); *Pearson v. City, of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir.1992).

Plaintiff's Equal Protection Clause claim is not based on its participation in a protected class. Rather, the claim is a "class of one" type of claim like that discussed recently in *Village of Willowbrook v. Olech*, ── U.S. ──, ──, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (U.S.2000). Thus, to prevail on this claim, the Plaintiff must show that the government treated the Plaintiff "differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Id.* at 1074.

Upon review of the record, the Court believes that the Defendants had a rational basis for denying the site plan in light of concerns for traffic. The only applicant for site plan approval by a restaurant near Henry Street near the time of the denial of McDonald site plan—the request by K–Mart—was not "similarly situated" since the K–Mart restaurant did not involve a drive-through. Additionally, the other drive-through restaurants in the City that had obtained zoning approval either were not located on Henry Street or had obtained their approval substantially before McDonald's Corporation's request such that they were not similarly situated zoning requests. Overall, it was rational to decide that an additional drive-through restaurant operated by McDonald's Corporation would cause too much traffic even if previous drive-through restaurants had been allowed because each zoning decision affecting traffic must be made in light of the traffic concerns then posed by the proposed use.[7] Therefore, Defendants are entitled to summary judgment as a matter of law.

### 4. *State Law Claims*

 This leaves unresolved Plaintiff's state law claims—which the Court regards as interesting, important, and quintessentially matters of state law. As to those claims, the Court has supplementary jurisdiction pursuant to 28 U.S.C. Section 1367. Nevertheless, since the only federal law claims asserted will be dismissed, federal law authorizes this Court to decline to exercise jurisdiction over the state law claims and remand those claims to state court. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754 (6th Cir. 2000). The Court believes that the interests of justice would be best served by the state court's resolution of the remaining state law issues and therefore declines to exercise jurisdiction over the remaining claims. Accordingly, the remaining claims shall be remanded to the Circuit Court for the County of Muskegon, Michigan.

### *CONCLUSION*

Accordingly, Defendants' Motion for (Partial) Summary Judgment (Dkt. No. 43) shall be granted and Plaintiff's Cross–Motion for Partial Summary Judgment (Dkt. No. 48) shall be denied. All federal claims shall be dismissed pursuant to Federal Rule of Civil Procedure 56. All state law claims shall be remanded to the Circuit Court for the County of Muskegon, Michi-

---

7. While McDonald's Corporation is probably correct that an additional restaurant would not be the straw that broke the camel's back in terms of traffic congestion on Henry Street, it must acknowledge that its proposed use would cause a large number of vehicle trips on the Street and at some point in develop-ment the Commission must limit development to maintain traffic safety. While the line drawn in the sand by the Commission does not strike McDonald's as a rational one, the Court believes that it is the type of decision that federal law gives local officials broad discretion to make.

gan. A Partial Judgment and Order of Remand shall issue consistent with this decision.